Monroe S. HARRIS, Plaintiff,

v.

**NEW YORK STATE EDUCATION DEPARTMENT, Defendant.**

No. 06 Civ. 0303.

United States District Court,
S.D. New York.

March 6, 2006.

Monroe S. Harris, Fresh Meadows, NY, Pro se.

Clement John Colucci, III, New York City, for Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

### I. BACKGROUND

Plaintiff Monroe S. Harris ("Harris") brought this action against the New York State Education Department (the "State") seeking injunctive and declaratory relief and monetary damages. The case arose out of the State's revocation in June of 1999 of Harris's license to practice medicine, following administrative proceedings in which he was found guilty of several charges of professional misconduct, including incompetent and grossly negligent patient care, fraudulent reporting and failure to maintain proper records. Harris asserts statutory claims under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. 701 et seq., and various violations of federal constitutional rights protected by 42 U.S.C. §§ 1983 and 1988, including guarantees under the First, Fourth and Fourteenth Amendments. Those claims are largely grounded on Harris's contention that the State failed to make reasonable accommodations for certain learning disabilities from which he suffers, specifically Attention Deficit Hyperactivity Disorder, a medical condition which Harris claims contributed to the circumstances involved in the charges of misconduct the State brought against him. Harris also asserts a claim under the Age Discrimination Act of 1975 (the "Age Discrimination Act"), 42 U.S.C. §§ 6101–6107.

In a previous action Harris instituted in this Court against the New York State Department of Health ("DOH"), he stated essentially the same statutory and constitutional claims predicated on the same underlying facts and events. See Harris v. New York State Dep't of Health, 202 F.Supp.2d 143 (S.D.N.Y.2002). In addition, Harris had brought judicial proceedings in New York State courts challenging DOH's revocation of his medical license on the basis of the same State misconduct charges filed against him. See Harris v. Novello, 276 A.D.2d 848, 714 N.Y.S.2d 365 (3rd Dep't 2000). In those actions final judgments were rendered against Harris by the state courts. In the action Harris then filed in this Court, the State moved to dismiss on numerous grounds: the Rooker–Feldman doctrine, preclusion under the principles of res judicata and collateral estoppel, State immunity from suit under the Eleventh Amendment of the federal Constitution, and legal insufficiency of Harris's statutory claims under the ADA and the Rehabilitation Act. The Court dismissed the action on all of these grounds. See Harris, 202 F.Supp.2d at 165–78. Harris did not appeal that judgment.

Harris asserts in the instant action that this case constitutes a "new civil action" for medical license restoration (Compl.¶ 4), that his previous action was dismissed on

the grounds of "states rights issue and the Rooker Feldman Doctrine" (*id.* ¶ 2), and that the Supreme Court has since held that the Eleventh Amendment "did not shelter states from ADA claims relating to the fundamental right of access to Federal Courts" (*id.* ¶ 3) (citing *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004)).

In reading through Harris's complaint, however, the Court notes that for the most part it amounts to nothing more than a repetition of every claim this Court exhaustively addressed and dismissed in Harris's previous case, and that every basis upon which the prior ruling was grounded applies with no less force to the instant action. Moreover, the Court notes that the State's revocation of Harris's medical license occurred in 1999. Thus, insofar as any claims Harris asserts in the instant case pursuant to federal law grounded on 42 U.S.C. § 1983, the ADA and the Rehabilitation Act relate back and are actually grounded on those actions they would likely would be time-barred by the applicable three-year statute of limitations. *See Stewart v. New York City Transit Auth.,* No. 03 Civ. 10329, 2006 WL 270100, at *8 (S.D.N.Y. Feb. 6, 2006); *Hason v. Office of Prof. Med. Conduct,* 314 F.Supp.2d 241, 247 n. 3 (S.D.N.Y.2004); *Malley v. New York City Bd. of Educ.,* 207 F.Supp.2d 256, 258 (S.D.N.Y.2002). In consequence, to some degree this action may be viewed as Harris pursuing the same meritless litigation.

Harris's complaint, however, also contains allegations related to his petition to restore his medical license, which is allegedly a separate proceeding, before a different agency—the Education Department, not the DOH. Harris asserts that his petition for restoration of his medical license was brought before the State on February 13, 2002 and that it was denied on Febru-

ary 11, 2005. (Compl.¶ 29.) As part of the medical license restoration produce, Harris had three interviews, with a Department of Education investigator, a "Peer Committee," and a "Committee on the Professions." (*Id.* ¶ 30.) According to Harris, in his petition and during the medical license restoration proceeding, he requested a reasonable accommodation for his disability, and no such accommodation was given. (*Id.* ¶¶ 33–35, 37, 101–02, 447–48.) This lack of accommodation allegedly negatively impacted his presentation, thus resulting in the State's refusal to restore his medical license. (*Id.* ¶¶ 117–18, 233–24, 245, 320.) Specifically, Harris alleges that the Peer Committee "felt the Plaintiff was unfocused" (*Id.* ¶ 233) and that his oral arguments "were not clearly presented" (*Id.* ¶ 245).

Even assuming Harris's complaint presents a new action, and not an attempt to relitigate matters already decided by this and other courts, most of Harris's charges must be dismissed, as detailed below. *See Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir.2000) (holding that a court has authority to dismiss a complaint *sua sponte,* even in an action not filed in forma pauperis, if it appears meritless on its face). Nonetheless, as also explained below, if properly repleaded his Rehabilitation Act claim may survive dismissal at this stage of the proceedings.

## A. *SECTION 1983 AND DUE PROCESS CLAIMS*

█ Because states and their agencies are not persons subject to suit under 42 U.S.C. § 1983 (" § 1983"), Harris's § 1983 claims against the State must be dismissed. *See United States v. City of Yonkers,* 96 F.3d 600, 619 (2d Cir.1996) (dismissing § 1983 claims against State Education Department); *Harris,* 202

F.Supp.2d at 178 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *Grimes v. Sobol*, 832 F.Supp. 704, 707 n. 4 (S.D.N.Y.1993), *judgment aff'd*, 37 F.3d 857 (2d Cir.1994). Moreover, this claim is barred by the Eleventh Amendment. *See Harris*, 202 F.Supp.2d at 178 (citing *Will*, 491 U.S. at 64, 109 S.Ct. 2304).

■ To the extent that Harris's due process claim is brought directly under the Fourteenth Amendment rather than through § 1983, it is similarly barred by the Eleventh Amendment. *See Santiago v. New York State Dep't of Corr. Services*, 945 F.2d 25, 31–32 (2d Cir.1991); *Lambert v. New York State Office of Mental Health*, No. 97–Cv–1347, 2000 WL 863461, at *3 (E.D.N.Y. June 9, 2000).

**B. *ADA AND REHABILITATION ACT CLAIMS AND THE ELEVENTH AMENDMENT***

■ Absent valid abrogation or express waiver of State sovereign immunity, the Eleventh Amendment bars actions in federal courts asserted directly against a state and against state agencies that act as arms of the state. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429–30 & n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *New York City Health & Hosps. Corp. v. Perales*, 50 F.3d 129, 134 (2d Cir.1995). This bar to suit applies regardless of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see Luder v. Endicott*, 253 F.3d 1020, 1024–25 (7th Cir. 2001) (Eleventh Amendment applies to injunctive relief as well as claims for damages in suits against the states; *Ex Parte Young* exception applies to suits against state officials, not suits against state);

*O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir.2000) (dismissing claims for injunctive and monetary relief against state agency on Eleventh Amendment grounds).

*1. Title II of the ADA*

■ Harris's claims under Title II of the ADA for monetary damages are barred unless he can establish that the State was motivated by discriminatory animus. *See Garcia v. S.U.N.Y. Health Sciences Center*, 280 F.3d 98, 110–12 (2d Cir. 2001) (holding that Title II in its entirety did not validly abrogate state sovereign immunity under the Eleventh Amendment, but that suits for monetary damages could proceed where plaintiff established that the Title II violation was motivated by discriminatory animus or ill will based on disability); *Harris*, 202 F.Supp.2d at 174. In *Harris*, this Court found that Harris's complaint was devoid of claims that the DOH was motivated by irrational animus or ill will based on disability. *See id.* Harris's current complaint against the State Education Department is similarly deficient, and thus his claim under Title II of the ADA for monetary damages must be dismissed.

■ *Garcia's* requirement that plaintiffs suing under Title II must establish discriminatory animus was limited to claims for monetary damages, and the Circuit Court explicitly stated that "actions by private individuals for injunctive relief for state violations of Title II have not been foreclosed by [its] decision." 280 F.3d at 115. However, absent abrogation or waiver, Eleventh Amendment immunity applies "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900; *see also Federal Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 769, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) ("[T]he primary function of sovereign immunity is not to protect State treasuries,

but to afford the States the dignity and respect due sovereign entities. As a result, ... 'the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment.' ") (quoting *Seminole Tribe v. Florida*, 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)) (internal citations omitted). Actions for injunctive relief under the *Ex parte Young* exception to this prohibition constitute suits against state officials, not against the state or state agency itself. *See Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900; *Santiago*, 945 F.2d at 32 (holding that equitable claims for prospective relief must be dismissed when plaintiff did not use *Ex Parte Young* fiction but instead named state agency directly rather than state official), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). Harris has not sued any state officers in their personal capacities, as he would not be precluded from doing if the facts warranted. Instead, he brings this action solely against the State Education Department. Thus, as now pled, Harris's Title II claims for injunctive relief against the State or its agencies are barred as well.

### 2. Section 504 of the Rehabilitation Act

■ Because Section 504 of the Rehabilitation Act was enacted pursuant to Congress's authority under the Spending Clause of Article I of the Constitution, Congress can require as a condition of accepting federal funds that the State waive its immunity, as long as Congress's intent to do so is expressed clearly and the state actually waives its immunity through an intentional relinquishment of a known right. *See Garcia*, 280 F.3d at 113–14. In *Garcia*, the Circuit Court found that New

York had not waived its immunity to suit under § 504 because at the time that it accepted the conditioned funds (from 1993 to 1995), it was not clear that the state had immunity to waive, "since by all reasonable appearances" such immunity had already been validly abrogated by Congress. *Id.* at 114 n. 4; *see Harris*, 202 F.Supp.2d at 177.[1]

In *Harris*, this Court held that since the events surrounding the revocation of Harris's license occurred no later than November 2000, pre-dating *Garcia* by over one year, the State had no reason to believe that its acceptance of § 504 funds had effected a valid waiver of sovereign immunity. *See* 202 F.Supp.2d at 177. To the extent that Harris's claims stem from the same actions, they are similarly barred. However, to the extent that Harris's claims stem from allegedly new events in connection with his 2002 petition for restoration of his medical license, acceptance of federal funds post-dated *Garcia* and New York's waiver of immunity would be explicit, since, as enunciated in *Garcia*, Congress has given "a clear expression of [its] intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity." *Garcia*, 280 F.3d at 113.

Under the Rehabilitation Act, recipients of federal funds must provide "reasonable accommodations" to qualified disabled individuals that permit such individuals meaningful access to their programs and services. *See Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir.2004). Harris's pleadings, for the most part, do not adequately allege what sort of reasonable accommodation he requested and what State programs or services were denied to him, to the extent such action relates to reasons for the State's decision

[1] The basis for this reasoning was that the provisions of the Rehabilitation Act track those of Title II of the ADA, and it was not until *Garcia* that the Circuit Court found that Congress had not validly abrogated immunity under Title II. *See Garcia*, 280 F.3d at 114.

to deny restoration of his medical license. Twice he states that he requested—from the Peer Committee and from the State—the "reasonable accommodation of understanding." (Compl.¶ 34, 447–48.). However, it is not clear what sort of accommodation would comprise "understanding," and thus it is impossible to judge whether he was denied a reasonable accommodation and whether such denial related to Harris's ability to resume medical practice in New York.

■ Harris does allege that he requested another, more specific accommodation: he states that he requested that the Committee on Professions allow him "to read from carefully prepared written material" during his oral presentation. (*Id.* ¶ 117.) Whether such ground qualifies as the type of accommodation of qualified disability and the type of state programs and services that the Rehabilitation Act was intended to reach, is not immediately clear. Giving Harris the benefit of the doubt, even if theoretically circumstances may arise under which the alleged state action he challenges could support a claim under the Rehabilitation Act for failure to accommodate (assuming that Harris is able to meet the other requirements necessary to demonstrate a prima facie case of discrimination under the Rehabilitation Act), it is unclear from Harris's pleadings how this denial of accommodation by the Committee on Professions had anything to do with his interactions with the Peer Committee, with the Department of Education investigator, or with the State's ultimate alleged discriminatory determination not to restore Harris's medical license. Accordingly, Harris's Rehabilitation Act claim is dis-

missed without prejudice but with leave to amend to more fully articulate what reasonable accommodation he requested and how the alleged failure to accommodate resulted in the State's discriminatory refusal to restore his medical license in violation of the Rehabilitation Act.[2]

### C. *AGE DISCRIMINATION CLAIM*

■ Harris also asserts a claim under the Age Discrimination Act of 1975, which prohibits age discrimination by programs or activities receiving federal assistance. *See* 42 U.S.C. §§ 6101–6107. Prior to filing suit under this act, however, a plaintiff must exhaust the administrative remedies set forth in 42 U.S.C. § 6104 and 45 C.F.R. § 90.50. *See* 42 U.S.C. § 6104(e)-(f); 45 C.F.R. § 90.50; 34 C.F.R. § 110.39; *Curto v. Bender,* No. 04 Cv. 26S, 2005 WL 724156, at *10 (W.D.N.Y. Mar. 28, 2005). As Harris's complaint in this action does not indicate compliance with these procedures, his claims under the Age Discrimination Act must be dismissed.

### *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the complaint of plaintiff Monroe Harris ("Harris") herein asserting claims against the New York State Education Department under the Americans with Disabilities Act, the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §§ 1983 and 1988 are dismissed with prejudice and without leave to amend, provided that Harris is granted leave to replead such claims against appro-

---

2. Of course, for Harris's claim to survive, he must also be able to establish a prima facie case. To establish a prima facie case of discrimination under § 504 of the Rehabilitation Act, Harris must show that (1) he has a disability for purposes of the Rehabilitation Act;

(2) he is otherwise qualified for the benefit that has been denied; (3) he was denied the benefits solely by reason of his disability; and (4) the benefit is part of a program or activity receiving Federal financial assistance. *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998).

priate defendants within thirty days of this Order; and it is further

**ORDERED** that Harris's claim asserted in this action pursuant to Section 504 of the Rehabilitation Act of 1973 is dismissed without prejudice, provided that within thirty days of the date of this Order Harris files an amended complaint addressing the deficiencies of the complaint herein as set forth in the Court's decision above; and it is finally

**ORDERED** that Harris's claim under the Age Discrimination Act of 1975 is dismissed without prejudice for failure to exhaust administrative remedies.

The Clerk of Court is directed to close this case.

**SO ORDERED.**