Monroe S. HARRIS, Plaintiff,

v.

Richard P. MILLS, Commissioner of Education; Robert M. Bennett, Regent Chancellor; and George E. Pataki, Governor, Defendants.

No. 06 CV 0303.

United States District Court, S.D. New York.

March 16, 2007.

Monroe S. Harris, Fresh Meadows, NY, Pro se.

### DECISION AND ORDER

MARRERO, District Judge.

### I. BACKGROUND

Pro se plaintiff Monroe S. Harris ("Harris") brought this action, seeking injunctive and declaratory relief and monetary damages against defendants Richard P. Mills ("Mills"), Commissioner of the New York State Education Department; Robert M. Bennett ("Bennett"), Chancellor of the New York State Education Department Board of Regents; and George E. Pataki, ("Pataki"), formerly the Governor of the State of New York (collectively, "Defendants"). Defendants moved to dismiss on a number of grounds, including that Harris's complaint fails to state a claim and that it is barred by the Eleventh Amend-ment. For the reasons set forth below, Defendants' motion is GRANTED.

### II. PROCEDURAL HISTORY

This controversy arose out of the revocation of Harris's license to practice medicine in June 1999, following administrative proceedings in which he was found guilty of several charges of professional misconduct, including incompetent and grossly negligent patient care, fraudulent reporting, and failure to maintain proper records. Harris contends that various state agencies failed to make reasonable accommodations for certain learning disabilities from which he suffers, specifically Attention Deficit Hyperactivity Disorder, a medical condition which Harris claims contributed to the circumstances involved in the charges of misconduct.

In his first action, Harris brought a suit against the New York State Department of Health ("DOH"), alleging that in revoking his medical license, it violated of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 et seq., the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §§ 701 et seq., as well as various federal constitutional rights protected by 42 U.S.C. § 1983 (" § 1983"), including guarantees under the First, Fourth and Fourteenth Amendments. See Harris v. New York State Dep't of Health, 202 F.Supp.2d 143 (S.D.N.Y.2002) ("Harris I "). The Court dismissed that action on several grounds. See id.

Harris's second action concerned a petition to restore his license, which he had submitted to the New York State Education Department ("DOE"). In that action, Harris alleged against the DOE essentially the same violations of statutory and constitutional rights, consisting of infringement of Title II of the ADA, the Rehabilitation Act, and § 1983. See Har-

ris v. New York State Education Dep't, 419 F.Supp.2d 530, 531–32 (S.D.N.Y.2006) ("Harris II"). He also asserted a claim under Age Discrimination Act of 1975 (the "Age Discrimination Act"), 42 U.S.C. §§ 6101–6107. See id. at 531. The Court dismissed Harris's § 1983 claim on the grounds that states and their agencies are not persons under § 1983 and that they are immune from suit under the Eleventh Amendment. See id. at 532–33. The Court also dismissed Harris's claim under the Age Discrimination Act, since Harris had not exhausted his administrative remedies as required by the statute. See id. at 535.

Harris's claims under the ADA and the Rehabilitation Act were also dismissed, but without prejudice. Harris was allowed to replead his ADA claim insofar as he was permitted to bring the claim against state officers in their personal capacities. See id. at 534. He was also granted leave to amend his claim under the Rehabilitation Act "to more fully articulate what reasonable accommodation he requested and how the alleged failure to accommodate resulted in the State's discriminatory refusal to restore his medical license in violation of the Rehabilitation Act." Id. at 535.

Harris subsequently filed an amended complaint, again asserting claims based on the violations of the ADA, the Rehabilitation Act, constitutional right of due process, and § 1983.[1] Defendants have moved to dismiss.

1. Harris asserts another claim, titled "Arbitrary and capricious on consideration of all relevant factors." (See Am. Compl. ¶¶ 184–95.) Because Harris does not allege any violation of law under this claim, it will not be considered by the Court.

2. The Court made this determination on the basis that although the Supreme Court held in Tennessee v. Lane, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), that Title II of the ADA validly abrogated the Eleventh

## III. Discussion

### A. The ADA Claim

In Harris II, this Court declared that, although states and their agencies are protected from suit by the Eleventh Amendment,[2] Harris would not be precluded from suing "state officers in their personal capacities." Id. at 534. However, further consideration of this issue by the Court leads to the conclusion that the ADA does not, in fact, provide for individual liability, either in the individual's official or personal capacity. See Lennon v. City of New York, 392 F.Supp.2d 630, 640 (S.D.N.Y.2005) (stating that "[a]lthough the Second Circuit has yet to expressly rule on the issue, district courts have held that individually named defendants cannot be personally liable under the ADA," and collecting cases rejecting individual liability under the ADA.); Hartnett v. Fielding Graduate Inst., 400 F.Supp.2d 570, 575 (S.D.N.Y.2005) (" 'Individual defendants may not be held personally liable for alleged violations of the ADA or the Rehabilitation Act.' Nor can individuals be named in their official or representative capacities as defendants in ADA or Rehabilitation Act suits.") (quoting Menes v. CUNY Univ. of New York, 92 F.Supp.2d 294, 306 (S.D.N.Y.2000)). Accordingly, Harris's ADA claim is dismissed with prejudice.

### B. Rehabilitation Act Claim

Because claims under the Rehabilitation Act may not be brought against

Amendment as applied to the access to courts, its holding is limited to the right of access to courts. By contrast, there is no comparable fundamental right at issue in this case, and the legislative history of the ADA does not indicate Congressional findings of a pattern of discrimination against the disabled in professional licensing that would support abrogation. See Roe v. Johnson, 334 F.Supp.2d 415 (S.D.N.Y.2004).

individuals, either in their personal or official capacity, Harris's Rehabilitation Act claim must also be dismissed. *See id.* Furthermore, even if Harris had brought his Rehabilitation Act claim against the state or one of its agencies, as he did in his original complaint, the claim would still be dismissed for the reasons that follow.

■ Under the Rehabilitation Act, recipients of federal funds must provide "reasonable accommodations" to qualified disabled individuals that permit such individuals meaningful access to their programs and services. *See Powell v. National Bd. of Med. Exam'rs,* 364 F.3d 79, 85 (2d Cir.2004). In *Harris II,* this Court established that the State of New York has waived its immunity by receiving federal funds, to the extent that Harris's claim stems from his 2002 petition for restoration of his medical license. *Harris II,* 419 F.Supp.2d at 534. Harris's previous complaint was dismissed without prejudice, so that Harris could "fully articulate what reasonable accommodation he requested and how the alleged failure to accommodate resulted in the State's discriminatory refusal to restore his medical license in violation of the Rehabilitation Act." *Id.*

■ In his amended complaint, Harris expresses dissatisfaction both with the DOE's process of hearing his application for the restoration of his medical license and with its ultimate denial of that application. With respect to the application process, Harris asserts that he requested to read from a prepared statement in his oral presentation to the Committee on the Professions, but that his request was denied. (Am.Compl.¶¶ 43–44.) Harris contends that this denial resulted in the Committee's finding that he was "unfocused" and that his arguments were not clearly presented. (*See id.*) As the Court noted in *Harris II,* Harris made a similar allegation in his original complaint, but he did not

make clear how this denial related to the final determination not to restore his medical license. Harris's amended complaint fails to provide any clarification or elaboration on this point.

■ With respect to the denial of his application, Harris fails to articulate any specific accommodation that he requested and that the DOE denied. "In order to establish a violation of § 504 of the Rehabilitation Act, a plaintiff must show: (1) that he has a disability for purposes of the Rehabilitation Act; (2) that he was 'otherwise qualified' for the benefit that has been denied; (3) that he has been denied the benefits 'solely by reason' of his disability; and (4) that the benefit is part of a 'program or activity receiving Federal financial assistance.'" *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998) (*citing Flight v. Gloeckler,* 68 F.3d 61, 63 (2d Cir.1995)). Instead of putting forward a particular accommodation and suggesting how it would allow him to practice medicine safely and ethically, Harris simply faults the DOE's actions as exhibiting a lack of "understanding" of his disabilities. Consequently, Harris fails to demonstrate that he is "otherwise qualified" to have his license to practice medicine restored to him. Additionally, Harris fails to demonstrate that he was denied restoration of his license "solely by reason" of his disability, arguing to the contrary that DOE denied his application in part because it took too harsh a view of his prior violations.

■ Because Harris again fails to adequately plead a violation of the Rehabilitation Act, the Court finds that granting leave to replead this claim against proper defendants would be futile, and the claim is therefore dismissed with prejudice.

### C. *Due Process Claim*

Harris asserts that his license to practice medicine is "a property and liberty

right," and that he was deprived of his license without due process of law as guaranteed by the Fourteenth Amendment. (Am.Compl.¶¶ 172,174)

Harris's claim that a medical license represents a property right is not without merit. *See Donk v. Miller*, 365 F.3d 159, 163 (2d Cir.2004) ("A horse trainer possesses a property interest in his professional license; accordingly, the Board may not suspend a trainer's license in a manner that violates the Due Process Clause of the Fourteenth Amendment.") (*citing Barry v. Barchi*, 443 U.S. 55, 64, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979)); *Keney v. Derbyshire*, 718 F.2d 352, 354 (10th Cir.1983) (holding that a medical license is constitutionally protected property right). The state action at issue here, however, is not the revocation of the medical license but the failure to restore it, and it is an entirely different question whether an individual has a property interest in a medical license that has been revoked. *Cf. Cleveland v. United States*, 531 U.S. 12, 20, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (holding that state licenses, when "in the government regulator's hands," represent regulatory power and not "property").

■■ However, the Court need not decide this issue because, even assuming that Harris does have a property interest in his revoked medical license, his complaint does not adequately allege a due process violation. The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not violated when an individual is deprived of property as the result of an unauthorized act of a state employee, as opposed to an established state procedure, provided that the state makes available a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 531, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *over-ruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir.1988). Harris does not allege a deficiency in the established procedures of the medical license restoration process that systematically deprives applicants of due process. Rather, Harris alleges that in his particular case, the particular members of the Committee on Professions deprived him of his right to due process by not sufficiently accommodating his learning disabilities. However, by permitting individuals aggrieved by the actions of state administrative agencies to initiate an Article 78 proceeding, New York courts provide an adequate and meaningful post-deprivation remedy. *See* N.Y. Public Health Law § 230–c(5) ("An order of the administrative review board for professional medical conduct or a determination of a committee … may be reviewed pursuant to the proceedings under article seventy-eight of the civil practice law and rules."). The constitutional adequacy of this remedy has been confirmed by the Second Circuit. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir.1996); *see also Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir.2001) ("An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims."). Indeed, Harris was certainly familiar with Article 78 proceedings, having availed himself of that remedy after his medical license was initially revoked. *See Harris v. Novello*, 276 A.D.2d 848, 714 N.Y.S.2d 365 (App. Div.3d Dep't 2000). However, there is no record that Harris initiated an Article 78 proceeding after his petition to restore his license was denied. Because New York provides a meaningful post-deprivation remedy and Harris does not indicate that he pursued

this remedy, his due process claim must be dismissed.

### D. *Section 1983 Claim*

█ Harris's claim under § 1983 asserts violations of civil rights guaranteed under the ADA and the Rehabilitation Act. However, as discussed above, Harris's claims under the ADA and the Rehabilitation Act are invalid, and their assertion through the vehicle of § 1983 does not propel them any further. Accordingly, the claim under § 1983 is dismissed.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the complaint (Docket No. 8) of plaintiff Monroe S. Harris is dismissed with prejudice.

The Clerk of Court is directed to close this case.

**SO ORDERED.**