07-2283-cv
Harris v. Mills

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: February 2, 2009                    Decided: July 9, 2009)

Docket No. 07-2283-cv

-------------------------------------

MONROE S. HARRIS, B.S., D.O.,

Plaintiff-Appellant,

- v. -

RICHARD P. MILLS, Commissioner of Education, MERRYL H. TISCH, Regent Chancellor, DAVID A. PATERSON, Governor,

Defendants-Appellees,

NEW YORK STATE EDUCATION DEPARTMENT,

Defendant.[*]

-------------------------------------

Before:    SACK and PARKER, Circuit Judges, and COTE, District Judge.[**]

Appeal from a judgment of the United States District Court for the Southern District of New York (Victor Marrero, Judge). The district court granted the defendants' motion to dismiss the plaintiff's pro se amended complaint. We conclude

_____

[*] The Clerk of the Court is respectfully directed to amend the official caption to conform to this one. David A. Paterson and Merryl H. Tisch are substituted for George E. Pataki and Robert M. Bennett, respectively, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

[**] The Honorable Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.

that the plaintiff's claims are legally insufficient, even when liberally construed, although we disagree with the district court's decision to base that conclusion in part on the theory that the plaintiff's claims under Title II of the Americans with Disabilities Act and the Rehabilitation Act cannot be asserted against individuals in their official capacity.

Affirmed.

DOUGLAS G. WADLER (Kenneth Joel Haber, of counsel), Law Office of Kenneth Joel Haber, P.C., Rockville, MD, for Appellant.

MARION R. BUCHBINDER, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Michael S. Belohlavek, Senior Counsel, Andrew M. Cuomo, Attorney General of the State of New York, of counsel), New York, NY, for Appellees.

SACK, Circuit Judge:

Monroe S. Harris appeals from a judgment of the United States District Court for the Southern District of New York (Victor Marrero, Judge).  Harris was formerly licensed by the state of New York as a doctor of osteopathic medicine; his medical license was revoked because he was found to have committed fraud and engaged in improper medical practices.  At issue is the New York State Education Department's denial of Harris's petition to reinstate his license.  Harris brought this action pro se pursuant to, inter alia, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq., and 42

2

U.S.C. § 1983. He claims to have been illegally denied a reasonable accommodation for his cognitive disabilities and unconstitutionally deprived of due process of law.

The district court granted the individual defendants' motion to dismiss the ADA and Rehabilitation Act accommodation claims because the court concluded that those statutes do not provide for individual liability. The district court also dismissed the Rehabilitation Act claim and the remaining claims for failure to state a claim upon which relief can be granted. Although we disagree with some of the district court's reasoning, we agree with it that the plaintiff's claims are legally insufficient, even when read with the lenity that must attend the review of pro se pleadings.

We therefore affirm the judgment.

**BACKGROUND**

This appeal is but the latest chapter in a litigation arising out of the 1999 revocation of Harris's license to practice medicine by the New York State Board for Professional Medical Conduct (the "Board").

The Revocation of the License

The Board revoked Harris's license to practice osteopathic medicine in part because it found, after an investigation and a hearing, that Harris had committed "fraudulent practice" and had made false statements when he submitted applications for reappointment to three different hospitals. See Harris v. N.Y. State Dep't of Health, 202 F.

3

Supp. 2d 143, 148-49 (S.D.N.Y. 2002) ("Harris I"). Harris had asserted in the applications that he was not at the time a subject of disciplinary action, even though he was in fact then under investigation by the Bureau of Controlled Substances of the New York State Department of Health for allegations of illegally storing and dispensing controlled substances. See id. at 148.[1] He also failed to disclose his previous misconduct in two other reappointment applications and failed to disclose, in an application to the New York State Education Department for renewal of his medical license, that his practice privileges at a hospital had been terminated. See id.

The Board also found that Harris had provided negligent and incompetent medical care. He had, for example, inappropriately prescribed diet pills to one patient and had prescribed to another patient a drug contraindicated for that patient's heart condition. See id. at 149. The Board also found that Harris had failed to maintain records adequately. See id.

The Board's revocation was affirmed by the State Administrative Review Board. See id. at 150. Harris then initiated a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 7801 et seq., in the New York State Supreme Court, Appellate Division. The Appellate Division confirmed the Administrative Review Board's

_____

[1] That investigation resulted in a formal acknowledgment of wrongdoing by Harris. See Harris I, 202 F. Supp. 2d at 148.

4

decision and dismissed the petition.  Harris v. Novello, 276 A.D.2d 848, 714 N.Y.S.2d 365 (3d Dep't 2000).

Thereafter, Harris brought a lawsuit against the New York State Department of Health ("DOH") in the district court. In it, he challenged the Board's revocation of his license, "alleg[ing] that DOH refused to acknowledge evidence of his learning disabilities and revoked his medical license without considering or offering him reasonable means to accommodate those disabilities," in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the ADA.  Harris I, 202 F. Supp. 2d at 164.  He also alleged "deficiencies in DOH's procedures" in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Id.

The district court granted DOH's motion to dismiss in light of the prior state proceedings, concluding that "Harris's efforts to relitigate . . . the revocation of his medical license are barred by application of the Rooker-Feldman doctrine."  Id. at 165; see D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923).  The court also concluded that the ADA and Rehabilitation Act claims against the state agency were barred by operation of the Eleventh Amendment, Harris I, 202 F. Supp. 2d at 173-74, and that the due process claim against the DOH was barred because that agency is not a "person" within the meaning of 42 U.S.C. § 1983, and because the Eleventh Amendment precluded the due process claim insofar as it sought money damages, id. at 178.

5

The Petition for Restoration

In February 2002, Harris applied to the New York Board of Regents, seeking to restore his license to practice medicine.[2] After meeting with Harris, a "Peer Committee" issued a report recommending that the Education Department deny his application. On June 7, 2004, the Education Department's Committee on the Professions met with Harris. It subsequently issued a report following the Peer Committee's recommendation. The Board of Regents affirmed. Harris does not assert that he made any further attempt to obtain review from New York state courts.

Harris brought this action pro se against the Education Department pursuant to the ADA, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. The district court dismissed the action sua sponte. Harris v. N.Y. State Educ. Dep't, 419 F. Supp. 2d 530, 535-36 (S.D.N.Y. 2006) ("Harris II"). The court observed that Harris's complaint was, in large part, an attempt to relitigate matters the court had already resolved in Harris I. Id. at 532. Insofar as the complaint "related to [Harris's] petition to restore his medical license," id., the court dismissed the ADA and Section 1983 claims against the state agency on sovereign immunity grounds, id. at 532-34. The court concluded that the state's sovereign immunity had been waived for the purposes of Harris's Rehabilitation Act claim. Id. at 534.

---

[2] That body of the Education Department has jurisdiction to "restore a license" of a "former licensee found guilty of professional misconduct." N.Y. Educ. Law § 6511.

But the court observed that the complaint failed to make clear what sort of "accommodation" Harris was denied, and the court therefore dismissed the Rehabilitation Act claim "with leave to amend to more fully articulate what reasonable accommodation [Harris] requested and how the alleged failure to accommodate resulted in the State's discriminatory refusal to restore his medical license." Id. at 535.

The Amended Complaint

Harris, continuing to act pro se, filed an amended complaint -- the complaint at issue on this appeal -- against the Commissioner of Education, the Regent Chancellor, and the Governor of the State of New York.[3] Harris requests injunctive, declaratory, and monetary relief under the ADA; the Rehabilitation Act; Section 1983 and 42 U.S.C. § 1988; the First, Fourth, and Fourteenth Amendments to the United States Constitution; and also pursuant to his assertion that the decision to deny the reinstatement petition was "[a]rbitrary and capricious" inasmuch as the defendants failed to follow their own procedural rules. Am. Compl. ¶¶ 184-95. In the amended complaint, Harris seeks, inter alia, an order granting Harris's application for reinstatement of his license, together with such "accommodation[]s . . . as might be necessary," and additional injunctive relief. Id. ¶¶ a-b.

---

[3] The Education Department is no longer a defendant in this action.

The amended complaint alleges that in 1998, on the advice of counsel and while his investigation by the Board was ongoing, see id. ¶ 34, Harris was diagnosed with "learning disabilities . . . i.e. disorder of written expression and 'rule out' reading disorder and Attention Deficit Hyperactivity Disorder," id. ¶ 7. Harris alleges that as a result of those conditions, he has "difficulty with comprehending the written word" and "a related problem with written expression." Id. ¶ 11. Harris further alleges that it is possible for him to "compensate" for these disabilities and, in theory, to "practice medicine or law, or any other discipline." Id. ¶ 14. Harris asserts that that is just what he has done, obtaining degrees from college and a school of osteopathic medicine "after initially failing out of both" as a result of "various self taught techniques and determination of will." Id. ¶¶ 15-16.

Though it's not entirely clear from the pro se pleadings, Harris appears also to allege that he made two requests for accommodation from the Department of Education, both of which were denied.

First, Harris apparently applied for "understanding of the impact of [his] disabilities." Id. ¶ 22. Harris says, in this regard, that "he could not have a fair medical license restoration hearing . . . without reasonable accommodation of understanding of LD & ADHD and it[]s past behavioral impact," id. ¶ 25, and similarly that "[w]ithout understanding [the] impact of [Harris's] impairment [the state officials] can not make a proper

8

evaluation . . . of [his] rehabilitation," id. ¶ 37. Harris's application for "understanding" relates to his demand for reinstatement of his license.

Second, Harris says, he made and was denied a request to read a written "explanation" before the Committee on the Professions because his oral explanation before the Peer Committee was thought by the Peer Committee to be "unfocused" and "not clearly presented." Id. ¶¶ 43-44. He "thought it would be more organized and clearly presented" to do it in writing. Id. ¶ 44. This sought-for accommodation relates to whether he received an adequate hearing.

The amended complaint also contests the judgment of the Committee regarding the impact of Harris's alleged disability, in part on the ground that the agency lacked expert testimony on the subject, and in part because it failed to adequately "acknowledge" evidence of his disability. Id. ¶¶ 153-54. The amended complaint asserts this as a separate basis for relief.

Included in the amended complaint, too, is much discussion in mitigation or denial of the actions for which Harris's license was revoked, all of which is "not presented for re[]litigation" but "to illustrate an understand[ing] [i.e., on Harris's part] of the past issues and to prevent [their] reoccurrence in the future ([i.e.,] rehabilitation)." Id. ¶ 63.

The district court granted the defendants' motion to dismiss the amended complaint. Harris v. Mills, 478 F. Supp. 2d 544 (S.D.N.Y. 2007) ("Harris III"). Harris's motion to

9

reconsider that decision, in part in light of his withdrawal of a claim for damages relief, was denied by endorsed order.

Harris, represented by counsel, appeals.

**DISCUSSION**

I. Standard of Review

We review de novo the grant of a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 392 (2d Cir. 2008), cert. denied, 129 S. Ct. 1579 (2009). We consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor. See id.

In accordance with the Supreme Court's decision Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), we apply a "plausibility standard," which is guided by "[t]wo working principles," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss" and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common

10

sense." Id. at 1950. Even after Twombly, though, we remain obligated to construe a pro se complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam); Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); Boykin v. KeyCorp, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).

## II. The Accommodation Claims

The district court concluded that "the ADA does not . . . provide for individual liability, either in the individual's official or personal capacity." Harris III, 478 F. Supp. 2d at 547. It reached the same conclusion with respect to the Rehabilitation Act. Id. at 547-48 ("Because claims under the Rehabilitation Act may not be brought against individuals, either in their personal or official capacity, Harris's Rehabilitation Act claim must also be dismissed."). The district court also dismissed the Rehabilitation Act claim on the ground that fails to state a claim upon which relief can be granted. See id. at 548.

## A. Individual Liability

As the defendants concede, the district court incorrectly concluded that claims under Title II of the ADA and the Rehabilitation Act cannot be asserted against individuals in their official capacity. In Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003), cert. denied, 541 U.S. 936 (2004), we wrote:

> We . . . cannot embrace the state defendant's statutory claim that an individual sued in his or her official capacity under the

11

doctrine of Ex parte Young is not a "public entity" subject to liability under the ADA, 42 U.S.C. § 12132. The real party in interest in an official-capacity suit is the government entity. As a result, it is irrelevant whether the ADA would impose individual liability on the officer sued; since the suit is in effect against the "public entity," it falls within the express authorization of the ADA.

Id. at 288 (citation omitted). In other words, we concluded that Title II and Rehabilitation Act suits for prospective injunctive relief may, under the doctrine established by Ex parte Young, 209 U.S. 123 (1908), proceed against individual officers in their official capacity, see Henrietta D., 331 F.3d at 289 ("[T]here is no basis for holding that the ADA or Rehabilitation Act intended to create the kind of comprehensive enforcement scheme that would preclude prospective injunctive relief against a state official in her official capacity."). Insofar as the amended complaint seeks prospective injunctive relief, then, it may be asserted against the individual defendants here in their official capacities.[4]

---

[4] It appears Harris intended to amend the complaint further to limit his request to injunctive relief only. Four days after the district court's dismissal of the amended complaint, Harris sent a communication to the court requesting "[r]econsideration" of the court's "[d]ecision" for six reasons that had previously been argued, but also for a seventh: "Drop money damages." See Endorsed letter of Monroe Harris entitled "Reconsideration," Mar. 26, 2007 (Docket Entry 21). By endorsement, the district court construed the letter as a "request [for] reconsideration," and denied the request because the letter "provides no controlling facts or law that the court overlooked in its prior rulings on this matter that would alter the outcome of the Court's decision." Id. But the part of the application that sought to "[d]rop money damages" was, strictly speaking, not a motion that "renew[ed] arguments previously made," and therefore did not

12

The district court relied upon two cases to conclude otherwise: Lennon v. NYC, 392 F. Supp. 2d 630, 640 (S.D.N.Y. 2005), which noted prior district court rulings that individually named defendants cannot be held personally liable under the ADA, and Hartnett v. Fielding Graduate Institute, 400 F. Supp. 2d 570, 575 (S.D.N.Y. 2005), aff'd in part and rev'd in part on other grounds, 198 Fed. Appx. 89 (2d Cir. 2006) (summary order), which quoted a pre-Henrietta D. case, Menes v. CUNY, 92 F. Supp. 2d 294, 306 (S.D.N.Y. 2000), for the proposition that individuals cannot "'be named in their official or representative capacities as defendants in ADA or Rehabilitation Act suits.'" Harris III, 478 F. Supp. 2d at 547. Insofar as Hartnett, Menes, and another post-Henrietta D. case that was relied upon by Lennon, Gentile v. Town of Huntington, 288 F. Supp. 2d 316, 322 (E.D.N.Y. 2003), hold that individual defendants cannot be sued in their official capacities for prospective injunctive relief under the ADA or the Rehabilitation Act, those holdings are contrary to Henrietta D., by which we are of course bound.

B. Legal Sufficiency

We conclude, nonetheless, that the amended complaint fails to state accommodation claims upon which the injunctive

---

"bring up for review the underlying order." "R" Best Produce, Inc. v. DiSapio, 540 F.3d 115, 121 (2d Cir. 2008). Liberally construed, it was an attempt to withdraw a claim for relief pursuant to Federal Rule of Civil Procedure 15(a)(2). Whether the district court should have granted that application is not at issue on this appeal.

13

relief Harris seeks can be granted, even under the liberal standard of review for pro se pleadings.

1. Applicable Legal Standards. Title II of the ADA "proscribes discrimination against the disabled in access to public services." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84-85 (2d Cir.), corrected, 511 F.3d 238 (2d Cir. 2004). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To assure that those requirements are met, "reasonable accommodation" may have to be provided to the qualified individual. See Henrietta D., 331 F.3d at 273-74. Similarly, the Rehabilitation Act requires that specified "otherwise qualified" disabled individuals receive reasonable accommodations from programs receiving federal financial assistance. 29 U.S.C. § 794(a); Alexander v. Choate, 469 U.S. 287, 301 (1985); Henrietta D., 331 F.3d at 273.

"[I]n most cases,"[5] the standards are the same for actions under both statutes. Powell, 364 F.3d at 85.

> In order for a plaintiff to establish a prima
> facie violation under these Acts, she must
> demonstrate (1) that she is a qualified
> individual with a disability; (2) that the
> defendants are subject to one of the Acts;
> and (3) that she was denied the opportunity
> to participate in or benefit from defendants'

_____

[5] The differences among the cases referred to do not affect the analysis here.

14

services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability.

Id. (internal quotation marks and brackets omitted).

2. The Standards Applied. Harris makes two accommodation claims. The first is that the Education Department wrongly denied him an "understanding of the impact of [his] disabilities." Am. Compl. ¶ 22. Without such understanding, he alleges, the reinstatement hearing was not "fair," id. ¶ 25, in that the Department could undertake no "proper" assessment of his "rehabilitation," id. ¶ 37. Even read liberally, Harris's complaint does not, however, identify how Harris's disabilities affected the behavior that caused the revocation of his license, nor how those disabilities could be accommodated to reform this behavior. Harris thus alleges, at core, that if only the defendants would "understand" the impact of his disabilities, they would be willing to overlook the actions that caused him to lose his license in the first place. Generally construed, this allegation amounts only to the contention that Harris's medical licensing qualifications should be relaxed in light of his disability.

This is not a reasonable accommodation claim. Title II of the ADA requires the accommodation of disabled persons who are entitled to a public benefit "whether or not [they are] given an accommodation." Powell, 364 F.3d at 84-85; see also 42 U.S.C. § 12131 ("The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable

15

_modifications to rules, policies, or practices_ . . . meets the essential eligibility requirements for [the relevant benefit]." (emphasis added)).  The paradigmatic example is a person who must use a wheelchair to access the courts -- a citizen is entitled to access the court system irrespective of whether he or she can walk.  See Tennessee v. Lane, 541 U.S. 509 (2004).  Here, by contrast, Harris would be entitled to a reinstatement of his license only if his disability is accommodated by the state's relaxation of its license qualifications.  Title II of the ADA requires no such diminishment of otherwise applicable standards.  See Felix v. N.Y. City Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003) ("The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally.").

Similarly with respect to the Rehabilitation Act claim, because Harris does not contest the Board's view that his past acts of fraud and improper practices disentitle him to the license, but asks only for the state's "understanding" of the reasons why he committed those actions, he cannot demonstrate that he is "otherwise qualified" for a medical license.  Harris's first accommodation claim is therefore legally insufficient under both statutes.

Harris's second accommodation claim arises out of the denial of his request for permission to read to the Committee on the Professions a written explanation so his case "would be more

16

organized and clearly presented." Am. Compl. ¶ 44. The district court concluded that Harris "did not make clear how this denial related to the final determination not to restore his medical license." Harris III, 478 F. Supp. 2d at 548.

The problem with this conclusion is that it assumes that Harris seeks the written-presentation accommodation in order to obtain his license to practice. But under a liberal reading of the amended complaint, Harris asks only for reasonable access to a hearing in which to make his case for reinstatement. The relation of the state's denial and the benefit Harris seeks -- a fair hearing -- is clear under this reading. Moreover, there is no dispute that Harris was otherwise entitled to such a hearing.

Even so construed, however, Harris's claim is insufficient. As an initial matter, there is no allegation (beyond ipse dixit) that Harris was denied the opportunity to read from a written statement "by reason" of his disability, let alone "solely by reason" of his disability, as the Rehabilitation Act requires. 29 U.S.C. § 794; accord Powell, 364 F.3d at 85; Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998). Moreover, it is not clear how such an accommodation would have helped Harris. According to the amended complaint, Harris has "difficulty with comprehending the written word" and "a related problem with written expression." Am. Compl. ¶ 11. If those are the disabilities with which Harris is afflicted, allowing him to prepare and read a written statement would not have accommodated his disabilities; it would have frustrated them.

17

We reject Harris's remaining arguments. He contends that the Committee failed in its "responsibility" to initiate "an interactive process" with him to discover an accommodation that would help him obtain his medical license. Pl.'s Br. 20. The ADA "envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." Jackan v. N.Y. State Dep't of Labor, 205 F.3d 562, 566 (2d Cir.), cert. denied, 531 U.S. 931 (2000); see 29 C.F.R. § 1630.2 ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation."); accord Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 219 (2d Cir. 2001). This, however, does not help Harris; he received hearings in which he was permitted to make his case for reissuance of his license. "There [is] no need for injunctive relief" if Harris was "already being reasonably accommodated." Henrietta D., 331 F.3d at 282.

Harris also argues that the Committee should have considered more documentary evidence on his behalf and wrongly found his claims of disability implausible. But he fails to explain how these arguments relate to his accommodation claim.

III. The Due Process Claim

The district court dismissed Harris's due process claim on the ground that Article 78 provided an adequate post-deprivation hearing for the denial of his petition to reinstate

18

his license. Harris III, 478 F. Supp. 2d at 549. The district court concluded that "Harris was certainly familiar with Article 78 proceedings, having availed himself of that remedy after his medical license was initially revoked," id., and that "[b]ecause New York provides a meaningful post-deprivation remedy and Harris does not indicate that he pursued this remedy, "his due process claim must be dismissed," id. at 549-50.

Harris argues that the defendants' failure to consider evidence of his character and disabilities wrongfully deprived him of a constitutionally protected interest. In addition, he argues, the defendants baselessly "assumed that Harris was not disabled." Pl.'s Reply Br. 10. Harris characterizes these arguments as challenges to the "state procedural scheme" as a whole, not merely a discrete set of unauthorized acts, id. at 11, and therefore contends that he was entitled to a pre-deprivation hearing under Zinermon v. Burch, 494 U.S. 113 (1990). We need not grapple with whether any of the defendants, by virtue of their decision-making authority or role, would be unable to avail themselves of the principle that "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006). Harris was given notice and an opportunity to be heard before his petition for reinstatement was denied. That, coupled with the

Article 78 post-deprivation remedy, is enough to satisfy due process.  See id. at 466-67.

Finally, Harris's amended complaint states as a separate cause of action that the defendants' decisions were "[a]rbitrary and capricious" inasmuch as the defendants failed to follow their own procedural rules.  Am. Compl. 21.  Insofar as this is intended to be a stand-alone legal claim based solely on violations of state regulations, it is not actionable in federal court.  See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 888 (2d Cir. 1987) ("Section 1983 is not a means for litigating in a federal forum whether a state or local administrative decision was arbitrary and capricious.").  It therefore states no claim upon which relief can be granted.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.