CATCOVE CORP. and Dede Gotthelf, Plaintiffs,

v.

Patrick HEANEY, et al., Defendants.

No. 08–CV–4156 (JS)(ETB).

United States District Court, E.D. New York.

Feb. 11, 2010.

Andrew J. Campanelli, Esq., David Antwork, Esq., Campanelli & Associates, P.C., Garden City, NY, for Plaintiffs.

Garrett W. Swenson, Jr., Esq., Coram, NY, for Defendants Patrick Heaney.

Kevin G.W. Olson, Esq., Office of Attorney General, New York, NY, for Defendants DEC.

David H. Arntsen, Esq., Kelly E. Wright, Esq., Devitt Spellman Barrett LLP, Smithtown, NY, for Remaining Defendants.

---

*ORDER*

SEYBERT, District Judge:

On June 19, 2009, Plaintiffs Catcove Corp. and Dede Gotthelf filed a 70 page, 347 paragraph Amended Complaint, asserting that the Town of Southampton ("Southampton" or "the Town"), the New York State Department of Environmental Conservation ("DEC") and numerous individual defendants violated 42 U.S.C. §§ 1983, 1985, 1988 by failing to approve zoning changes that would have facilitated Plaintiff's proposed commercial development. Defendants have filed three separate motions to dismiss. In addition, Defendants Southampton, Kabot, Grabosky, Murphree, Blaney, Collins, Ludlow, Shea, and D'Angelo have moved for Fed.R.Civ.P. 11 sanctions, while Plaintiffs have cross-moved for attorneys' fees and costs under 28 U.S.C. § 1927.

For the foregoing reasons, the motion to dismiss brought by the New York State Department of Environmental Conservation is GRANTED. The other two motions to dismiss are GRANTED IN PART AND DENIED IN PART. The motion for Rule 11 sanctions is GRANTED. The cross-motion for attorneys' fees and costs under 28 U.S.C. § 1927 is correspondingly DENIED.

*BACKGROUND*

Ms. Gotthelf is the "female owner of her own real estate development company, Catcove" which, among other things, purchases and develops properties throughout Long Island. (Amend. Compl. ¶ 39). Through Catcove, Ms. Gotthelf sought to develop two commercial properties in the Town of Southampton: (1) the Catcove Shopping Center; and (2) a mixed hotel, commercial and assisted living project known as Riverwalk. Ms. Gotthelf failed to secure the proper zoning changes for either development. Ms. Gotthelf alleges that the Defendants purposefully frustrated the Catcove Shopping Center project for years, in an ultimately successful attempt to force her to sell the project to a politically-connected developer. (*Id.* ¶¶ 51–54). Ms. Gotthelf then moved on to the Riverwalk development, but achieved little success in getting it approved. Ms. Gotthelf and Catcove ("Plaintiffs") fruitlessly struggled to secure Riverwalk's approval for seven years, then commenced this action. Plaintiffs assert that Defendants' failure to approve Riverwalk constituted "class of one" discrimination, sex discrimination, violations of procedural and substantive due process, and conspiracy.

Specifically, Plaintiffs contend that, under the Town's Comprehensive Zoning Plan of 1999 and the Town's Master Plan

of 1970, Plaintiffs' property was suitable for the proposed Riverwalk project. (*Id.* ¶ 59). But, rather than process the Riverwalk zoning applications in an objective fashion, Plaintiffs allege that Defendants kept throwing up obstacles to the project's approval. Plaintiffs further allege that, each time they overcame one obstacle, Defendants would respond by imposing another one. (*see, generally, Id.* ¶¶ 67–192). For instance, Plaintiffs allege that, in 2005, Defendants Patrick Heaney, Jefferson Murphee and Martin Shee used a torrential flood as a "golden opportunity" to resurvey the property and "flag[ ]" new areas as "wetlands." (*Id.* ¶¶ 106–07). Plaintiffs then contend that, in February 2007, a "Mr. Mannetta" approached Plaintiffs and told them that he could get the project approved if they sold most of the property to "other local developers." (*Id.* ¶¶ 170–71). Plaintiffs claim that, after they refused this offer, Defendants retaliated by causing "the Town to increase the real estate taxes upon Ms. Gotthelf's property by four hundred (400%) percent." (*Id.* ¶ 173). Plaintiffs further allege that, while Defendants stymied Riverwalk, Defendants provided a similarly situated developer, RHCMUPDD, with "special treatment." (*Id.* ¶ 178).

Plaintiffs also claim that Mr. Heaney and Mr. Murphree administered their respective offices in an improper fashion.[1] In this regard, Plaintiffs contend that Mr. Heaney and Mr. Murphree "employed the powers of their offices to operate the Town of Southampton as their own 'private club' within which those they favored would be permitted to engage in beneficial activities, such as being permitted to develop commercial properties within the Town." (*Id.* ¶ 32). Plaintiffs further allege that,

within this " 'kingdom,' women were discriminated against, while Heaney's personal friends received royal treatment." (*Id.* ¶ 35).

## DISCUSSION

### I. *Standard of Review on a Motion to Dismiss*

In deciding motions to dismiss brought under Fed.R.Civ.P. 12(b)(6), the Court applies a "plausibility standard," which is guided by "[t]wo working principles," *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris,* 572 F.3d at 72 (quoting *Ashcroft* ). Second, only complaints that state a "plausible claim for relief" can Rule 12(b)(6). *Id.* Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. *See Robinson v. Gov't of Malaysia,* 269 F.3d 133, 140 n. 6 (2d Cir.2001). When there is a question involving federal jurisdiction, such jurisdiction must be shown affirmatively. *See Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). Accordingly, the Court will not draw inferences favorable to the party asserting jurisdiction. *See id.*

---

1. Mr. Heaney was the Town Supervisor, while Mr. Murphree was the Planning and Development Administrator.

## II. *Ripeness*

■ Defendants first contend that this Court lacks subject matter jurisdiction because Plaintiffs' claims are supposedly not ripe. The Court disagrees. Although, as Defendants note, Southampton has not yet reached a formal decision on Plaintiffs' zoning applications, these applications have now been pending—in one form or another—for close to nine years. In addition, Plaintiffs have sufficiently pled that Defendants set an "Ever Changing Finishing Line," whereby they constantly imposed new obstacles whenever Plaintiffs satisfied the Defendants' previous purported requirements for approval. (*see, generally,* Amend. Compl. ¶¶ 145–148). Consequently, Plaintiffs have sufficiently pled that the "futility exception to the final decision requirement" applies. *Southview Assoc., Ltd. v. Bongartz,* 980 F.2d 84, 98 (2d Cir. 1992). And, as a result, Plaintiffs' claims are ripe for adjudication.

## III. *Plaintiffs' Equal Protection Claim*

### A. *Plaintiffs' "Class of One" Theory*

■ Plaintiffs principally base their Equal Protection claim on a "class of one" theory. (Amend. Compl. ¶ 261). Specifically, Plaintiffs allege that, "[b]ased on personal animus against the plaintiffs and/or preferential treatment towards locally based real estate developers, the defendants selectively enforced town laws and policies to discriminate against the plaintiffs." (*Id.* ¶ 259). But this claim fails as a matter of law. In *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 128 S.Ct. 2146, 2154, 170 L.Ed.2d 975 (2008), the Supreme Court held that "class of one" claims cannot challenge "forms of state action ... which by their nature involve discretionary decision making." Consequently, post-*Engquist,* a plaintiff who proceeds on a class of one claim must allege that "the differential treatment resulted from non-discretionary state action." *See, e.g., Alfaro v. Labrador,* 2009 WL 2525128, *8–9, 2009 U.S. Dist. LEXIS 72532, *27–33 (E.D.N.Y. Aug. 14, 2009), *Seymour's Boatyard, Inc. v. Town of Huntington,* 08–CV–3248, 2009 U.S. Dist. LEXIS 45450, 2009 WL 1514610, *7 (E.D.N.Y. June 1, 2009); *Tarantino v. City of Hornell,* 615 F.Supp.2d 102, 112 (W.D.N.Y.2009) (recognizing an identical third element of a class of one claim); *Balakrishnan v. Kusel,* 08–CV–1440, 2009 U.S. Dist. LEXIS 39394, 2009 WL 1291755, *5 (E.D.N.Y. May 8, 2009). Here, Plaintiffs primarily challenge the Southampton Defendants' application of local zoning laws. But zoning is a classic example of a "state action" that involves "discretionary decision making." *Engquist,* 128 S.Ct. at 2154. Indeed, New York law vests the Southampton Defendants with "broad discretion" in adjudicating zoning matters. *See, e.g., Olson v. Scheyer,* 67 A.D.3d 914, 889 N.Y.S.2d 245, 246 (2d Dep't 2009) (use variance); *Wolff v. Town/Village of Harrison,* 30 A.D.3d 432, 816 N.Y.S.2d 186, 187 (2d Dep't 2006) (zoning changes); *Mueller v. Zoning Bd. of Appeals of the Town of Southold,* 10 A.D.3d 687, 783 N.Y.S.2d 593, 595 (2d Dep't 2004) (interpreting ordinances). Consequently, *Engquist* precludes the kinds of zoning-related claims that Plaintiffs bring.

In this regard, Defendants correctly argue that *Alfaro* is distinguishable. There, this Court recently permitted a "class of one" zoning-related claim brought against Southampton to survive summary judgment. *See id.* at 2009 WL 2525128, *8–9, 2009 U.S. Dist. LEXIS 72532 *27–33. But *Alfaro* depended on this Court's finding that, although the challenged action (ordering a police raid in response to a minor zoning violation) was "theoretical[ly] discretionary," Southampton had *never* exercised its "discretion" on a "day-by-day basis" in this manner. *Id.* Instead, prior to

its dispute with the plaintiff, Southampton had applied "*de facto* standard[s]" which avoided the use of heavy-handed tactics, such as raids, to enforce its zoning code. *Id.* Thus, in raiding the plaintiff's property, Southampton had literally placed the plaintiff into a "class of one." *Id.*

Here, Plaintiffs do not plead that Defendants violated "*de facto* standard[s]" by engaging in the challenged conduct. On the contrary, Plaintiffs plead that Defendants, and Mr. Heaney in particular, routinely exercised their statutory discretion in an arbitrary, irrational, and arguably criminal fashion. For instance, Plaintiffs plead that Mr. Heaney's "personal friends received royal treatment within the Town." (Amend. Compl. ¶ 32). And Plaintiffs contend that Mr. Heaney's misuse of power "to advance the personal pecuniary interests of himself and/or his friends" was "pervasive." (*Id.* ¶ 36). To that end, Plaintiffs do not attempt to identify a similarly situated party who received neutral, non-discriminatory treatment. Instead, they only identify a politically-connected entity that received "special treatment." (*Id.* ¶¶ 177–78). But Plaintiffs do not have a Constitutional right to receive "special treatment" from a local zoning board. And, given Plaintiffs' claims that the Defendants favored a small cadre of "personal friends" over everyone else, Plaintiffs do not truly plead a "class of one" claim. Instead, at most, Plaintiffs seek relief based on their membership in a non-cognizable "class of not some."

Plaintiffs' "class of one" equal protection claim is DISMISSED.

### B. *Plaintiff's Gender Discrimination Theory*

■ Plaintiffs also allege an Equal Protection violation based upon sex discrimi-

nation. Specifically, Plaintiffs allege that: (1) Mr. Heaney "possessed [ ] a clear bias against women," and that "women were discriminated against" within Southampton; (2) in a local blog report, "several women" described "Heaney and his administration's 'Neanderthal' Town Legal Staff—to be disrespectful, *misogynistic* and crude"; (3) Mr. Heaney "discriminate[d] against Ms. Gotthelf because she is female" and wanted "to force her to sell her properties" to his "male friends,"; (4) Mr. Murphee said that he liked Plaintiffs' proposed project, but "wanted a *real developer* to develop it"; and (5) Messrs. Heaney and Murphree coerced Plaintiffs to sell a different property to one of "defendants' 'good old boys.'" (Amend. Compl. ¶¶ 32, 35, 41, 46, 51). Given these allegations, the Court will permit Plaintiffs' sex discrimination claims against Mr. Heaney and Mr. Murphree to survive—for now. With respect to Mr. Heaney, Plaintiffs have pled enough factual allegations to suggest that Mr. Heaney possessed an animus towards women and favored male developers over Ms. Gotthelf. These allegations (and reasonable inferences drawn therefrom) suffice to set forth a "plausible" claim against Mr. Heaney, albeit barely. *See Ashcroft,* 129 S.Ct. at 1949. Likewise, accepting Plaintiffs' factual allegations as true, and considering the Amended Complaint as a whole, it is reasonable (although hardly obligatory) to infer that Mr. Murphree did not consider Ms. Gotthelf a "real developer" because of her gender.

■■ That being said, the Court permits the gender discrimination claims against Mr. Heaney and Mr. Murphree to survive with serious hesitation.[2] In this regard, the Court notes that Plaintiffs pled

---

**2.** The Complaint sufficiently pleads that Mr. Heaney and Mr. Murphree had the authority

to make public policy. Consequently, the Complaint sufficiently states a gender dis-

gender discrimination only in the alternative. (Amend. Compl. ¶ 272). The core thrust of Plaintiffs' Amended Complaint alleges that Mr. Heaney and Mr. Murphree stymied Plaintiffs' zoning applications in an attempt to "steal" Plaintiffs' expected profit or divert this profit to their politically connected friends. (*see, e.g.,* Amend. Compl. ¶¶ 67, 68). If Messrs. Heaney and Murphree in fact acted out of a desire to enrich themselves and their friends, it undercuts the suggestion they acted based on Ms. Getthelf's gender.[3] Consequently, the Court wishes to remind Plaintiffs' counsel that their Rule 11 obligations "are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *See O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir.1996) (quoting the Advisory Committee's notes). Thus, attorneys "have a continuing obligation to monitor the strength of their clients' claims and discontinue representing clients who pursue claims that—although not obviously frivolous at the outset—are entirely unsupported or refuted by the evidence." *McGowan v. Ananas Spa East, LLC,* 2009 WL 2883065, *1, 2009 U.S. Dist. LEXIS 79378, *4 (E.D.N.Y. Sept. 2, 2009). Here, if Plaintiffs take discovery "but fail to uncover facts sufficient—under any objective standard" to support their sex discrimination claim, the Court would advise against

Plaintiffs opposing a summary judgment motion. *Id.*

■ Plaintiffs also assert a sex discrimination claim against Ms. Kabot, Ms. Grabosky, Mr. Collins and Mr. Shea. Specifically, Plaintiffs allege that these Defendants used their "power (or knowingly allowed others) to discriminate against plaintiff on the basis of gender" and "allowed a 'Good Old Boy club' member to have plaintiff's sewage rights." (Amend. Compl. ¶¶ 205, 212, 232, 245). But, despite drafting a 70 page, 347 paragraph Amended Complaint, Plaintiffs do not plead a single factual assertion to support these conclusory allegations. Likewise, Plaintiffs also sue Mr. Blaney, Mr. Ludlow, Ms. D'Angelo and the DEC for sex discrimination, but plead no facts, or even conclusory allegations, to suggest that these Defendants discriminated against Plaintiffs because of Ms. Gotthelf's sex. Because Plaintiffs fail to plead any facts suggesting that Defendants Kabot, Grabosky, Collins, Shea, Blaney, Ludlow, D'Angelo, and the DEC engaged in sex discrimination, Plaintiffs' sex discrimination claim against these Defendants is DISMISSED.

## IV. *Plaintiffs' First Amendment Claim*

■■ Plaintiffs' second cause of action asserts that Defendants retaliated against them for exercising their First Amendment right to petition. Specifically, Plaintiffs contend that, after they "refused to sell the project to the defendants' favored

crimination claim against Southampton as well. *See Yang Feng Zhao v. City of New York,* 656 F.Supp.2d 375, 392 (S.D.N.Y.2009) ("a single unconstitutional act or decision, when taken by an authorized decision-maker, may be considered policy and thus subject a municipality to liability").

**3.** *See, e.g., Hai Vo v. Goodwill Indus.,* 2009 WL 5179136, *10, 2009 U.S. Dist. LEXIS

121635, *29 (S.D.N.Y. Dec. 29, 2009) (plaintiff alleged "incompetence" and "corruption," not discrimination); *Santucci v. Veneman,* 2002 WL 31255115, *4, 2002 U.S. Dist. LEXIS 19032, *11 (S.D.N.Y.2002) (dismissing Title VII claims because plaintiff's allegations concerned "an allegedly corrupt system of payoffs," not "discriminat[ion] on the basis of race, color, religion, sex or national origin").

developer, and insisted upon continuing to pursue their applications for zoning approvals, the defendants proceeded to retaliate" by stripping their property of a statutory protection against tax increases and then raising the property's taxes by 400%. (Amend. Compl. ¶ 301). The Court agrees that filing zoning applications is a form of petitioning that deserves First Amendment protection. *See Hampton Bays Connections, Inc. v. Duffy*, 127 F.Supp.2d 364, 373 (E.D.N.Y.2001). But Plaintiffs plead no facts to link their zoning applications to the tax increases the Defendants imposed. And, if anything, the facts Plaintiffs do plead suggest that the tax increases were "retaliation" against Plaintiffs' refusal to sell the property to a favored developer, not for Plaintiffs' petitioning. Thus, for example, Plaintiffs plead that "Heaney and Murphree manipulated the Town to first strip her property of statutory protections ... and to then cause the Town to 'reassess' her property" in order to "place direct and substantial pressure upon Ms. Gotthelf to sell the property to one of Heaney's friends." (Amend. Compl. ¶ 162). Similarly, Plaintiffs also plead that "[f]rustrated by her refusal to sell the property, the defendants caused the Town to increase the real estate taxes ... by four hundred (400%) percent." (*Id.* ¶ 173). Plaintiffs obviously had a right not to sell their property. But a refusal to sell property is not petitioning. It follows then that retaliation for refusal to sell does not violate the First Amendment. Plaintiffs' second caused of action is DISMISSED.

## V. *Plaintiffs' Procedural Due Process Claim*

■■ Next, Plaintiffs argue that Defendants' actions denied them procedural due process under the Fifth and Fourteenth Amendments. In this regard, Plaintiffs ask this Court to recognize both a Constitutional right to "fair procedure" in the processing of zoning applications, and a property interest in that right. (Pl. Opp. Br. at 7–9; Amend. Compl. ¶ 308). Plaintiffs concede that the Second Circuit does not recognize such a right or property interest. Indeed, if anything, Plaintiffs acknowledge that the "fair procedure" right they seek to recognize does not comport with the Second Circuit's "legitimate claim of entitlement" precedents. (Campanelli Decl. at ¶¶ 16–45); *see also Clubside, Inc. v. Valentin*, 468 F.3d 144, 152 (2d Cir. 2006). Plaintiffs' entire case for recognizing such a right (and the contingent property interest) rests upon Justices Stevens' and Brennan's dissent in *Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 674, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). But a dissent is not law. This Court will not recognize a new Constitutional right that seven Supreme Court justices declined to accept and that the Second Circuit has never supported. Plaintiffs are, of course, welcome to pursue their novel Constitutional argument should this case reach the appellate level. Plaintiffs' third cause of action is DISMISSED.

## VI. *Substantive Due Process*

Plaintiffs' fourth cause of action asserts that Defendants violated their right to substantive due process. But this claim also depends upon the "fair procedure" right and property interest that Plaintiffs ask the Court to recognize. (Pl. Opp. Br. at 10–11). As the Court declines to recognize such a right or property interest, Plaintiffs' substantive due process claim also fails. Plaintiffs' fourth cause of action is DISMISSED.

## VII. *Conspiracy Claim*

■■ Finally, Plaintiffs assert a conspiracy claim under 42 U.S.C. § 1985(3). To state such a cause of action, Plaintiffs must allege: (1) a conspiracy (2) for the

purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999). And to meet the first prong, Plaintiffs "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir.2003).

 Here, any potential conspiracy claim is circumscribed by two considerations. First, the only "unlawful end" that Plaintiffs have sufficiently pled is gender discrimination. *See supra* at 334–35. Thus, to sufficiently plead conspiracy, Plaintiffs must plead facts demonstrating the existence of a conspiracy to engage in gender discrimination against Plaintiffs. And second, the Court notes that—except for the DEC—all the Defendants are part of the same municipal entity, the Town of Southampton. Thus, the intracorporate conspiracy doctrine bars any kind of "conspiracy" claim directed solely against the Southampton Defendants. *See Alfaro*, 2009 WL 2525128 at *11, 2009 U.S. Dist. LEXIS 72532 at *38; *Broich v. Incorporated Village of Southampton*, 08–CV–0553, 650 F.Supp.2d 234, 247 (E.D.N.Y. 2009). So, to successfully plead a § 1985 claim, Plaintiffs must plead facts demonstrating that at least one or more of the Southampton Defendants conspired with the DEC to discriminate against Plaintiffs on the basis of Ms. Gotthelf's gender. They have failed to do so. Plaintiffs plead no facts to suggest that the DEC, or any of its personnel, reached a meeting of the minds with any of the Southampton Defen-

dants, much less entered into a sex discrimination conspiracy. As a result, Plaintiffs' conspiracy claim fails. Plaintiffs' fifth cause of action is DISMISSED.

## VIII. *Sanctions*

 The Southampton Defendants (except Mr. Heaney) have moved for Rule 11 sanctions. Upon a party's motion, the Court can impose sanctions for violations of Rule 11(b). Fed.R.Civ.P. 11(c)(1). Rule 11(b)(2), in turn, provides that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (2) the claims ... are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery [.]

In deciding whether a pleading violates Rule 11, the Court applies "an objective standard of reasonableness[.]" *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir.1996). A party advances an objectively unreasonable claim if, at the time the party signed the pleading, "it is patently clear that [the] claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands[.]" *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985); *see also Kropelnicki v. Siegel*, 290 F.3d

118, 131 (2d Cir.2002). But "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir.2003). And the Court must "resolv[e] all doubts in favor of the part[y] facing sanctions." *Coakley v. Jaffe*, 72 F.Supp.2d 362, 365 (S.D.N.Y. 1999).

Here, the Southampton Defendants contend that, although suing them individually, Plaintiffs' 347 paragraph Amended Complaint "fail[s] to assert any plausible facts upon which claims of individual liability could lie," and, in fact, "fails even to mention all but a few of them in the 'facts.'" (Southampton Def. Sanctions Br. at 2). For the most part, the Court agrees. Plaintiffs do not make a *single* factual allegation against Ms. Grabosky. With respect to Mr. Collins, Plaintiffs allege only that he met with them once. (Amend. Compl. ¶ 61). The sole factual allegation "against" Ms. D'Angelo contends that she performed the ministerial task of "advis[ing] Murphree and Catcove that the Department of Land Management forwarded the site plan to the Town Environmental Division." (*Id.* ¶ 101). Similarly, the sole factual allegation "against" Mr. Ludlow concerns him "informing Heaney that the Town had neglected to submit an application to the Conservation Board." (*Id.* ¶ 102). And, far from showing any wrongdoing or "conspiracy," the only factual allegations about Ms. Kabot concern her *opposition* to Mr. Heaney's supposed abuses of power. (*Id.* ¶¶ 34, 38). Yet, despite pleading nothing against any of these Defendants, Plaintiffs still named them individually. In addition, without even an iota of factual support, Plaintiffs also explicitly allege that Ms. Kabot, Ms. Grabosky, and Mr. Collins used their power "to discriminate against plaintiff on the basis of gender." (*Id.* ¶¶ 205, 212, 232).

Then Plaintiffs proceed to assert each count against all Defendants, including the sex discrimination count, despite pleading factual allegations concerning this claim only against Messrs. Heaney and Murphree. Consequently, even after resolving all doubts in Plaintiffs' favor, the claims asserted against Ms. Kabot, Ms. Grabosky, Mr. Collins, Ms. D' Angelo and Mr. Ludlow are "utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir.2003). And, as a result, Plaintiffs' Complaint violates Rule 11. *See Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F.Supp.2d. 239, 264 (S.D.N.Y.2009) (complaint violated Rule 11 because it alleged "no facts" against certain defendants and instead "swept these defendants up in alleged conduct vaguely attributed to the 'defendants' or 'defendants, or some of them'"); *Kingvision Pay–Per–View Ltd. v. Ramierez*, 05–CV–0277, 2005 WL 1785113, *3 (S.D.N.Y.2005) (complaint violated Rule 11 because it failed to provide "any evidentiary support for the factual allegations" underlying a claim and, instead, "merely makes broad, conclusory allegations of fact").

■ That being said, sanctions are a matter for the Court's discretion. And here, the Court believes that only mild sanctions are appropriate. Among other things, Plaintiffs' counsel's affidavit sets forth that they pled in such a conclusory fashion because Southampton refused to comply with New York Freedom of Information Law ("FOIL") requests, and out of a fear that the Court would have precluded them from naming these defendants later, should discovery turn up evidence against them. (Campanelli Sanctions Decl. ¶¶ 33–38). Plaintiffs had legitimate concerns. And, although Plaintiffs sought an improp-

er remedy[4] by filing a wholly conclusory Amended Complaint, the Court has nevertheless taken into account Plaintiffs' frame of mind in deciding what level of sanctions are appropriate. To that end, the Court imposes $1000 in sanctions, to be paid into the Court's registry.

Because this Court awards sanctions, the Court correspondingly denies Plaintiffs' cross-motion for attorneys' fees and costs, predicated on the supposed inappropriateness of the Southampton Defendants' motion.

## CONCLUSION

Plaintiffs' second, third, fourth and fifth causes of action are dismissed in their entirety.

Plaintiff's first cause of action is dismissed except again Mr. Heaney, Mr. Murphree, and Southampton, and it may proceed only upon a gender discrimination theory.

The Clerk of the Court is ordered to terminate all Defendants except Mr. Heaney, Mr. Murphree, and Southampton.

The Court issues Rule 11 sanctions against Plaintiffs in the amount of $1,000.

SO ORDERED.

---

4. To the extent that Southampton refused to comply with valid FOIL requests, Plaintiffs should have commenced an Article 78 proceeding in state court to enforce compliance. *See generally M. Farbman & Sons, Inc. v. New York City Health and Hospitals Corp.*, 62 N.Y.2d 75, 81, 476 N.Y.S.2d 69, 71, 464 N.E.2d 437 (N.Y.1984). Likewise, notwithstanding Plaintiffs' prior litigation experiences, most courts—including this one—freely permit plaintiffs to initially name John Doe defendants and then amend their complaints to identify those John Does when discovery reveals their identities.