RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0257p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

SHELBI HINDEL; BARBARA PIERCE; MARIANNE DENNING; THE NATIONAL FEDERATION OF THE BLIND, INC.,

        *Plaintiffs-Appellants*,

      *v.*

JON HUSTED, Ohio Secretary of State,

        *Defendant-Appellee*.

No. 17-3207

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:15-cv-03061—George C. Smith, District Judge.

Argued: October 12, 2017

Decided and Filed: November 13, 2017

Before: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jessica P. Weber, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellants. Nicole M. Koppitch, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Jessica P. Weber, Daniel F. Goldstein, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, Jason C. Boylan, Kristen Henry, DISABILITY RIGHTS OF OHIO, Columbus, Ohio, for Appellants. Nicole M. Koppitch, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. Claudia Center, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC., San Francisco, California, Sophia Lin Lakin, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC., New York, New York, Daniel R. Walfish, Andrea G. Hood, Benjamin J. Reed, Michael E. Mirdamadi, MILBANK, TWEED, HADLEY & MCCLOY LLP, New York, New York, for Amici Curiae.

———————

**OPINION**

———————

GRIFFIN, Circuit Judge.

The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, provides important safeguards protecting the rights of the disabled. In this appeal, plaintiffs claim Ohio's paper-ballot absentee voter system discriminates against the blind, in violation of Title II of the ADA. Under the Ohio scheme, blind voters must seek the aid of a sighted person in order to vote absentee, thus depriving them of the ability to vote anonymously. Plaintiffs propose that the State of Ohio provide blind voters with an online absentee ballot in lieu of a paper one, and adopt online ballot marking tools used in other states for blind voters. The district court granted judgment on the pleadings in favor of defendant Ohio Secretary of State, ruling that plaintiffs' proposed accommodation would fundamentally alter Ohio's voting program. Because the district court based its ruling on defendant's mere allegation of an affirmative defense without any evidentiary support, we reverse and remand for further proceedings consistent with this opinion.

I.

Plaintiffs allege Ohio's absentee voter system violates the ADA by failing to provide reasonable accommodations for the blind. A paper ballot is generally the only available means for an absentee voter to vote.[1] Because blind voters must seek assistance from sighted individuals to fill out their paper ballots, plaintiffs allege Ohio deprives them of their equal opportunity to vote privately and independently.

Plaintiffs contend that the deprivation is not intractable. On the contrary, they claim that multiple auxiliary aids and services exist that could afford plaintiffs the ability to vote privately. For example, Maryland developed its own online ballot marking tool specifically designed to be

———————

[1]In accordance with the Uniformed and Overseas Civilian Absentee Voting Act of 1986, 42 U.S.C. § 1973ff, *et seq.*, military personnel and overseas civilians may vote via email. This section was editorially reclassified to 52 U.S.C. § 20301, *et seq.*, and made part of the Voting Assistance and Election Administration.

compatible with screen readers that allows blind voters to vote without assistance from others. Maryland has offered to share its online ballot marking tool with other states free of charge. Oregon, Wisconsin, New Hampshire, and Alaska use substantially similar systems. On the basis of these allegations, plaintiffs' complaint raises one count alleging a violation of the ADA, requesting a permanent injunction prohibiting defendant from violating the ADA, and requiring a private and independent method of absentee voting for the blind.[2]

Defendant raised the affirmative defense of "fundamental alteration" under the ADA in his answer and, concurrently, filed a Rule 12(c) motion for judgment on the pleadings based upon this defense. *See* Fed. R. Civ. P. 12(c). He argued, contrary to plaintiffs' allegations, that he has not *refused* to implement the absentee voting technology plaintiffs have requested; instead, it would violate state law for defendant to do so in light of Ohio's certification requirements for voting equipment. According to defendant, plaintiffs' attempt to circumvent Ohio's election laws and force through untested and uncertified voting tools—which are neither appropriate nor necessary auxiliary aids under the ADA—would fundamentally alter Ohio election law.

The district court granted defendant's motion for judgment on the pleadings. Relying in part on *National Federation of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016), the district court held that plaintiffs had alleged a prima facie case of discrimination under the ADA. However, the court diverged from *Lamone*'s reasoning in ruling that the modifications, accommodations, or auxiliary aids proposed by plaintiffs did not meet the ADA's requirements that the proposals be reasonable and not fundamentally alter Ohio's voting laws.

The district judge noted that while the proposed ballot marking software met the regulatory definitions of "auxiliary aids and services," it would not afford plaintiffs and other blind voters with the complete voting independence they desired because third parties would still need to assist blind voters in completing and returning the ballot by mail. Moreover, plaintiffs were asking the court to order the implementation of new software throughout the state before its

---

[2]Plaintiff also complained about Ohio's voter website, which the district court resolved in plaintiffs' favor by way of a permanent injunction, and which neither party has appealed. Accordingly, the absentee voting claim is the only one before us.

compatibility with all of the different voting systems currently used in Ohio's 88 counties was established.  Because plaintiffs' proposed accommodation would essentially waive Ohio's existing laws regarding pre-implementation review of election tools, the purpose of which are to protect the validity of elections in Ohio, the district court refused to impose the requested accommodation on the state.  Therefore, the court granted judgment on the pleadings in favor of defendant.

Plaintiffs now appeal.

II.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  We review de novo an order dismissing an action under Rule 12(c) of the Federal Rules of Civil Procedure, *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 629 (6th Cir. 2014), and apply the same review standard as for review of a Rule 12(b)(6) motion to dismiss.  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).  "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment" as a matter of law.  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir. 1973)).  To survive a Rule 12(c) motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory."  *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007))).

III.

A.

Plaintiffs challenge the district court's decision both procedurally and on the merits. We focus on their procedural argument—the court erred in making a fact-specific determination on the basis of the pleadings alone that plaintiffs' proposed accommodation would fundamentally alter Ohio's voting system. Instead, they argue this determination should have been made only after discovery, expert testimony, an evidentiary hearing, or trial. We agree.

"Fundamental alteration" is an affirmative defense under the ADA providing that governmental entities need not accommodate disabled individuals if doing so "would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.164.[3] Affirmative defenses to ADA claims such as this are typically fact-based and not capable of resolution on the basis of the pleadings alone. *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013) ("It is a factual issue whether a plaintiff's proposed modifications amount to 'reasonable modifications' which should be implemented, or 'fundamental alterations,' which the state may reject." (alterations & citations omitted)); *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 609–14 (7th Cir. 2004) (discussing the difficulty in resolving the fundamental alteration question on the pleadings); *cf. Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015) (describing the "'highly fact-specific' nature of the [ADA] reasonableness inquiry").

In the present case, the district court acknowledged as much:

Although . . . the fundamental alteration analysis is normally a fact-intensive inquiry, Plaintiffs are asking this Court to judicially certify an election tool that has never been used in Ohio or even presented to the Ohio Board of Elections for review. Regardless of any factual findings the Court may make at a later hearing, there are no allegations before this Court like the factual findings in *Lamone*. Namely, neither of the suggested tools have been presented to the Board of

---

[3]Within the ADA, Congress granted the Attorney General the authority to promulgate regulations necessary to its implementation, 42 U.S.C. § 12134(a), which "are entitled to 'controlling weight, unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Johnson v. City of Saline*, 151 F.3d 564, 570 (6th Cir. 1998) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984)).

Elections for certification, testing, or a vote, nor have the tools been used in an Ohio election before.

However, the district court erred in merely accepting defendant's affirmative defense without requiring facts and evidence to support it.  Throughout these proceedings, plaintiffs have alleged that Ohio discriminates against them on the basis of their visual impairments.  Their proposed remedy is to require the state to provide online ballots and allow the use of online ballot marking tools, as have been used successfully by blind voters in other states.  In response, defendant *alleged* that adopting plaintiffs' proposed remedy would fundamentally alter Ohio's voting system.  This is because all voting machines, and related materials, must be examined by a bipartisan "board of voting machine examiners," comprising "competent and experienced election officer[s]" or persons knowledgeable about the operation of voting equipment before they can be certified for use in an election.  Ohio Rev. Code § 3506.05(B).

But the ADA requires more.  The Secretary of State's mere affirmative-defense allegation is insufficient to warrant judgment on the pleadings in his favor because "a public entity has the burden of *proving* that compliance with this subpart would result in [a fundamental] alteration."  28 C.F.R. § 35.164 (emphasis added); *cf. Keith v. Cty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013) (noting, in a Title I case, that the burden shifts to the defendant to prove its defense under the ADA).

In cases such as this, where an ADA plaintiff is asking for the waiver of a generally applicable rule, the court's "focus should be on whether waiver of the rule in the particular case would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change."  *Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003) (internal quotation marks omitted), *abrogated in part on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc).  The purpose of Ohio's certification system is evident from the statutory text.  Ohio Rev. Code § 3506.10 explains that the purpose of the certification requirements is to ensure the voting device "will correctly, accurately, and continuously register and record every vote cast."  And "Ohio's interests in preserving the integrity of its elections, protecting 'voters from confusion and undue influence,' and 'ensuring that an individual's right to vote is not undermined by fraud in the election process' are

compelling." *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016) (quoting *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (plurality opinion)).

But it is not enough for defendant to merely allege plaintiffs' proposed remedy undermines these interests. In order to prevail on his affirmative defense, defendant has the burden of production and persuasion to prove that plaintiffs' proposed accommodation—the ballot marking tools and electronic ballots—would fundamentally alter Ohio's election system by not "correctly, accurately, and continuously register[ing] and record[ing] every vote cast." Ohio Rev. Code § 3506.10. Without proof that the proposed ADA accommodation is unreasonable or incompatible with Ohio's election system, defendant's affirmative defense based on an allegation, alone, is insufficient.

Here, defendant's arguments fall into the logical fallacy dismissed by the Fourth Circuit in *Lamone*: "defendant[] [is] merging [the] *procedural* certification requirement with substantive concerns about whether the tool should be certified. The mere fact that a procedural requirement has not been met does not necessarily mean that the underlying substantive purpose of that requirement has not been met. The underlying question is fact-specific." 813 F.3d at 509. The district court erred in accepting defendant's allegation that the remedy would fundamentally alter Ohio's voting system simply because it had not passed the certification process—only if the substantive interests undergirding the certification rules cannot be met by the ballot marking tools and electronic ballots, as shown by evidence presented by the parties, can the district court properly make a determination on defendant's affirmative defense.

Moreover, a state procedural requirement may not excuse a substantive ADA violation. *Id.* at 508 ("The Supreme Court has held that the ADA's Title II, at least in certain circumstances, represents a valid exercise of 14th Amendment powers, and as such it trumps state regulations that conflict with its requirements."). "Requiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does." *Jones*, 341 F.3d at 487 (Cole, J., dissenting). Nonetheless, at the evidentiary hearing on remand, the district court may look to the certification process as a manner to evaluate the merits of the factual issue.

In addition, Ohio's certification process for "vendors" and "software developers" does not apply to disabled plaintiffs who claim an ADA violation. *See* Ohio Rev. Code § 3506.05(A)(3) (defining "vendor" as "the person that owns, manufactures, distributes, or has the legal right to control the use of equipment, or the person's agent"); § 3506.05(C)(1) (requiring "vendor[s]" to submit the proposed voting equipment or software for certification).[4] Plaintiffs have no statutory standing or duty to employ the certification process.

B.

Defendant also argues the district court correctly distinguished *Lamone* on the fundamental alteration analysis for the reasons explicitly noted by the district court in that case. *See Nat'l Fed'n of the Blind v. Lamone*, No. RDB-14-1631, 2014 WL 4388342, at *13 (D. Md. Sept. 4, 2014) (noting the fundamental alteration "analysis would [perhaps] be different if Plaintiffs sought to gain access to an uncertified tool that had never been used in a real-world situation."). But this is a distinction without a difference at this point in the proceedings. The Fourth Circuit was reviewing a district court judgment post-bench trial. *Id*. at *1–2; *Lamone*, 813 F.3d at 501. On the contrary, the district court here did not—and could not, given that it was reviewing a motion for judgment on the *pleadings*—engage in the requisite factual inquiry to determine whether plaintiffs' proposed remedy would fundamentally alter Ohio's voting system. Thus, while the Maryland district court had the opportunity to review and weigh the evidence before it made its determination, the district court here had no such opportunity. Given, as noted

---

[4]In its entirety, Ohio Rev. Code § 3506.05(C)(1) provides:

> A vendor who desires to have the secretary of state certify equipment shall first submit the equipment, all current related procedural manuals, and a current description of all related support arrangements to the board of voting machine examiners for examination, testing, and approval. The submission shall be accompanied by a fee of two thousand four hundred dollars and a detailed explanation of the construction and method of operation of the equipment, a full statement of its advantages, and a list of the patents and copyrights used in operations essential to the processes of vote recording and tabulating, vote storage, system security, pollbook storage and security, and other crucial operations of the equipment as may be determined by the board. An additional fee, in an amount to be set by rules promulgated by the board, may be imposed to pay for the costs of alternative testing or testing by persons other than board members, record-keeping, and other extraordinary costs incurred in the examination process. Moneys not used shall be returned to the person or entity submitting the equipment for examination.

*See also* § 3506.05(H)(1) ("The guidelines shall establish procedures requiring vendors or computer software developers to place in escrow with an independent escrow agent approved by the secretary of state a copy of all source code and related documentation, together with periodic updates as they become known or available.").

above, the highly factual nature of defendant's fundamental alteration defense, *see, e.g.*, *Anderson*, 798 F.3d at 356, the court erred in granting judgment on the pleadings.

## IV.

While plaintiffs also allege the district court erred in granting judgment on the pleadings to defendant because their proposed remedy would not fundamentally alter Ohio's voting system, we do not address that issue here. This court cannot assess that substantive issue for the same reason the district court erred in so doing—namely, the *facts* supporting the parties' positions have yet to be litigated.

## V.

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.