Filed 10/22/21  Singh v. Prasifka CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TAJINDER SINGH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WILLIAM J. PRASIFKA, in his official capacity as Executive Director of the Medical Board of California et al.,<br><br>    Defendants and Respondents. | B302113<br><br>(Los Angeles County Super. Ct. No. BS173944) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel and Barbara M. Scheper, Judges.  Reversed with directions.

Fenton Law Group, Benjamin J. Fenton, Dennis E. Lee, and Alexandra de Rivera for Plaintiff and Appellant.

Rob Bonta, Attorney General, Gloria L. Castro, Senior Assistant Attorney General, Robert McKim Bell, Supervising Deputy Attorney General, and Peggie Bradford Tarwater and

Claudia Morehead, Deputy Attorneys General for Defendants and Respondents.

_____

## INTRODUCTION

Tajinder Singh took a test required to become a licensed physician in California four times, and failed each time. Then, according to Singh, he discovered he had a disability that affected his test-taking ability. He took the test a fifth time, with medication for his disability, and passed.

The Medical Board of California, however, has a four-strikes-and-you're-out rule: An applicant for a medical license only gets four chances to pass the test. When the Medical Board refused to count his passing score on the fifth test, Singh sued the Medical Board and its executive director, William J. Prasifka (collectively, the Medical Board), for disability discrimination under federal and state statutes and a writ of mandate under Code of Civil Procedure section 1085.

The trial court sustained demurrers by the Medical Board without leave to amend. Because we accept as true Singh's allegation that using his fifth test score would accommodate his disability, and because the reasonableness of a proposed accommodation is a factual question on which the Medical Board has the burden of proof and which therefore cannot be resolved on demurrer, we reverse and direct the trial court to enter a new order overruling the demurrers to the disability discrimination causes of action (but sustaining the demurrer to the cause of action for a writ of mandate).

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Singh Unsuccessfully Requests an Accommodation from the Medical Board for a Learning Disability*

In 2013 Singh completed his medical studies at the Ross University School of Medicine in Dominica, in the course of which he passed Step 1 and Step 2 of the United States Medical Licensing Examination (USMLE). Singh then began a residency program in California that required him to pass Step 3 of the USMLE. He failed the test four times: in March 2015, October 2015, March 2016, and December 2016.

In 2017, while Singh was preparing to take the Step 3 test a fifth time, his tutor observed Singh "had sufficient knowledge to pass the exam" and suggested Singh might have "undiagnosed anxiety." At his tutor's suggestion, Singh visited his primary care physician, who diagnosed him with "performance-related anxiety and prescribed propranolol, a calming agent." In August 2017 Singh, this time "while taking propranolol," took the Step 3 examination again and passed.

Singh, however, faced a problem: Business and Professions Code section 2177, subdivision (c)(1),[1] provides, "An applicant shall have obtained a passing score on all parts of Step 3 of the [USMLE] *within not more than four attempts* in order to be eligible for a physician's and surgeon's certificate" (italics added). Section 2177, subdivision (c)(2), provides one exception to this four-attempt rule: "Notwithstanding paragraph (1), an applicant who obtains a passing score on all parts of Step 3 . . . in more than four attempts and who meets the requirements of

---

[1]    Undesignated statutory references are to the Business and Professions Code.

3

Section 2135.5 shall be eligible to be considered for issuance of a physician's and surgeon's certificate." The exception under section 2135.5, however, is for physicians who are licensed in another state. It requires, among other things, that the applicant "hold an unlimited and unrestricted license as a physician and surgeon in another state and has held that license continuously for a minimum of four years prior to the date of application." (§ 2135.5, subd. (a).) Because Singh did not meet the requirements of section 2135.5, he did not qualify for the exception to the four-attempt rule.

In November 2017 Singh wrote the Medical Board. He stated that, as a result of "a learning disability," he was "unable to pass the USMLE Step 3 until his 5th attempt" and that the Americans with Disabilities Act (ADA) required the Medical Board to provide him "a reasonable accommodation" to the four-attempt rule in section 2177. He proposed, as an accommodation, that the Medical Board accept the passing score he received on his fifth attempt or, alternatively, allow him to take and pass a different examination "in lieu of passing the USMLE Step 3 within four . . . attempts."

In response, the Medical Board wrote that a request for a reasonable accommodation under the ADA "needs to be sought at the time an individual requests to take an examination." The Medical Board cited section 2177, subdivision (c)(1), as requiring "an applicant to pass Step 3 within four attempts in order to be eligible for a physician's and surgeon's certificate" and stated that "[t]he Board does not have the authority to waive a statutory requirement."

4

B. *Singh Files This Action, and the Trial Court Sustains Demurrers by the Medical Board Without Leave To Amend*

In June 2018 Singh filed a petition for writ of mandate (Code Civ. Proc., § 1085) and complaint against the Medical Board. In support of his cause of action for writ relief in the operative, second amended petition and complaint, Singh alleged that he had a "medical disability," namely, "performance-related anxiety"; that he "did not identify [ ] or receive diagnosis for" this disability "until after his fourth attempt to take the USMLE Step 3 exam"; that under 42 United States Code section 1983, Title II of the ADA, the federal Rehabilitation Act of 1973 (29 U.S.C. § 794), and the California Fair Housing and Employment Act (FEHA) (Gov. Code, § 12900 et seq.), the Medical Board had a ministerial duty not to discriminate against him on the basis of his disability; and that the Medical Board violated that duty when it refused to provide him a reasonable accommodation regarding the four-attempt requirement in section 2177, subdivision (c)(1). Singh sought a writ of mandate ordering the Medical Board to deem his fifth, successful attempt to pass Step 3 "sufficient to qualify him for medical licensure" or, in the alternative, to engage in a good faith interactive process "to determine effective reasonable accommodations for his disability." Singh also asserted three causes of action seeking that same relief as an injunction: violation of Title II of the ADA, violation of section 504 of the Rehabilitation Act, and discrimination under FEHA.

The trial court sustained a demurrer by the Medical Board to the cause of action seeking a writ of mandate on the ground it failed to state facts sufficient to constitute a cause of action. In

5

particular, the court concluded Singh had "not alleged a ministerial duty owed by [the Medical Board] to issue him a medical license, provide a reasonable accommodation, or engage in interactive process with respect to the four-attempt rule under section 2177[, subdivision (c)], the ADA, the Rehabilitation Act, [FEHA], or 42 U.S.C. section 1983." Concluding that Singh had three opportunities "to plead a writ claim" and that his opposition to the demurrer failed to show a reasonable probability he could amend to do so, the court denied him leave to amend.

In a separate proceeding, the trial court also sustained a demurrer by the Medical Board to the remaining three causes of action on the ground they did not state facts sufficient to constitute a cause of action. The court agreed with the Medical Board that Singh had "not sufficiently alleged that he is a *qualified* individual to state each cause of action because he has not met the licensing board's essential eligibility requirements for applicants." Here, too, the court denied leave to amend. The court signed and filed an order dismissing the case, from which Singh timely appealed. (See Code Civ. Proc., § 581d.)

## DISCUSSION

A. *Standard of Review*

On appeal from an order sustaining a demurrer, we examine the petition and complaint de novo "'to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.'" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; accord, *International Brotherhood of Teamsters, Local 848 v. City of Monterey Park*

6

(2019) 30 Cal.App.5th 1105, 1109; see *SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1051 ["[o]ur review is governed by settled standards, which apply equally whether a demurrer challenges a complaint or a petition"]; *Jones v. Omnitrans* (2004) 125 Cal.App.4th 273, 277 ["[o]n appeal from a dismissal entered after an order sustaining a demurrer to a petition for writ of mandate, we review the order de novo, determining independently whether the petition states a cause of action as a matter of law"].) "'"[I]t is error for a . . . court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory."'" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1201.) "'We deem to be true all material facts that were properly pled, as well as all facts that may be inferred from those expressly alleged.'" (*International Brotherhood*, at p. 1109.)

B.      *The Trial Court Erred in Sustaining the Demurrer to Singh's Causes of Action Under the ADA, the Rehabilitation Act, and FEHA*

Singh argues that he alleged sufficient facts to constitute causes of action for violation of the ADA, the Rehabilitation Act, and FEHA. The Medical Board argues he did not. He did.

1.      *Singh Alleged Sufficient Facts To Constitute Causes of Action for Violation of the ADA and the Rehabilitation Act*

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

7

discrimination by any such entity." (42 U.S.C. § 12132; see *K.M. ex rel. Bright v. Tustin Unified School Dist.* (9th Cir. 2013) 725 F.3d 1088, 1096.) "'To state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1252; see *E.R.K. ex rel. R.K. v. Hawaii Dept. of Educ.* (9th Cir. 2013) 728 F.3d 982, 992 (*E.R.K.*).) A prima facie case for disability discrimination under section 504 of the Rehabilitation Act "is identical, except that the plaintiff must also prove that the relevant program receives federal financial assistance." (*E.R.K.*, at p. 992; see *Lovell v. Chandler* (9th Cir. 2002) 303 F.3d 1039, 1052 ["The ADA applies only to public entities, whereas the [Rehabilitation Act] proscribes discrimination in all federally-funded programs."].) In fact, "'there is no significant difference in the analysis of rights and obligations created by'" section 504 of the Rehabilitation Act and Title II. (*K.M. ex rel. Bright*, at p. 1098.)

The "'ADA's broad language brings within its scope anything a public entity does'" (*Hason v. Medical Bd. of California* (9th Cir. 2002) 279 F.3d 1167, 1172-1173), including licensing by the Medical Board. (See *id.* at p. 1173 [the Medical Board's "medical licensing clearly falls within the scope of Title II"]; 28 C.F.R. §§ 35.130(b)(6) [a "public entity may not

8

administer a licensing . . . program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability"], 35.130(b)(8) [a "public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered"].) And the Medical Board does not dispute it receives federal financial assistance or otherwise contend the Rehabilitation Act does not apply to the Medical Board's licensing program.

The Medical Board challenges only the second element of the four elements Singh must allege to establish the Medical Board violated Title II and the Rehabilitation Act, i.e., that he is "otherwise qualified" to receive a medical license from the Medical Board. But Singh alleged that element sufficiently to state a cause of action.

### a. *The "Otherwise Qualified" Element*

Under both Title II of the ADA and the Rehabilitation Act, a person with a disability is "qualified" to receive government benefits or services or to participate in a government program or activity if the person "is one who, 'with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements' for such benefits, services, or participation." (*Fry v. Saenz* (2002) 98 Cal.App.4th 256, 263 (*Fry*); see 42 U.S.C. § 12131(2) [Title II definition of "[q]ualified individual with a disability"].) Borrowing language from Title I of the ADA, which concerns employment discrimination and defines a qualified individual "in terms of employment"

9

(*Mary Jo C. v. New York State & Local Retirement System* (2d Cir. 2013) 707 F.3d 144, 169 (*Mary Jo C.*)),[2] courts explaining the elements of a Title II claim often state that "otherwise qualified" means the person with a disability can meet the essential eligibility requirements of the services at issue "with or without reasonable accommodation."  (See, e.g., *Estate of Martin v. California Dept. of Veterans Affairs* (9th Cir. 2009) 560 F.3d 1042, 1047; *Zukle v. Regents of University of California* (9th Cir. 1999) 166 F.3d 1041, 1046 (*Zukle*); see also *Wong v. Regents of University of California* (9th Cir. 1999) 192 F.3d 807, 816, fn. 26 (*Wong*) ["Although Title II of the ADA uses the term 'reasonable modification' rather than 'reasonable accommodation,' these terms do not differ in the standards they create."].)

Title II's definition of a "qualified" person with a disability "thus distinguishes between two categories of requirements: (1) rules, policies, or practices, which are subject to the requirement of reasonable modification, and (2) essential eligibility requirements, which are not."  (*Mary Jo C.*, *supra*, 707 F.3d at pp. 155-156.)  "Cases interpreting the 'essential eligibility requirement' language indicate that whether an

---

[2]  "Title I's definition speaks in terms of employment:  'As used in [Title I,] . . . "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'  [Citation.]  But Title II defines the same term instead as an individual who 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'"  (*Mary Jo C.*, *supra*, 707 F.3d at p. 169, citing 42 U.S.C. §§ 12111(8), 12131(2); see *Wong v. Regents of University of California* (9th Cir. 1999) 192 F.3d 807, 816, fn. 26.)

eligibility requirement is essential is determined by consulting the importance of the requirement to the program in question." (*Id.* at p. 157; see *Fry*, *supra*, 98 Cal.App.4th at p. 264 ["A program eligibility requirement which could discriminate against the disabled may be deemed essential only if the program's purposes could not be achieved without the requirement."]; *Pottgen v. Missouri State High School Activities Assn.* (8th Cir. 1994) 40 F.3d 926, 929 (*Pottgen*) [age limit was an essential eligibility requirement in a high school baseball program because of the requirement's "immense importance" to the program].)[3]

"This reading is re[i]nforced by the regulations implementing the relevant section of the ADA, which require '[a] public entity [to] make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.' [Citation.] The regulations indicate that 'essential eligibility requirements' are those requirements without which the 'nature' of the program would be 'fundamentally alter[ed].'" (*Mary Jo C.*, *supra*, 707 F.3d at p. 158, citing 28 C.F.R. § 35.130(b)(7); see *Castle v. Eurofresh, Inc.* (9th Cir. 2013) 731 F.3d 901, 910 ["Federal law requires public entities to 'make reasonable modifications in policies, practices, or procedures

---

[3]     The court in *Pottgen* conducted this analysis, at least in part, under section 504 of the Rehabilitation Act, but stated the analysis "necessarily affect[ed]" and was "[c]onsistent with" the court's analysis under Title II of the ADA. (*Pottgen*, *supra*, 40 F.3d at pp. 929-931.)

when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'"]; *Pottgen*, *supra*, 40 F.3d at p. 930 [age limit was an essential eligibility requirement because waiving it "would constitute a fundamental alteration in the nature of the baseball program"].)

Stated another way, an eligibility requirement is not "essential" if a "reasonable accommodation" to the requirement would enable the person to qualify for the benefit (*McElwee v. County of Orange* (2d Cir. 2012) 700 F.3d 635, 643; *Marshall v. New York State Public High School Athletic Assn., Inc.* (W.D.N.Y. 2017) 290 F.Supp.3d 187, 199 (*Marshall*))—where "reasonable accommodation" means an accommodation that does not impose on the program "'undue financial and administrative burdens'" or require a "'fundamental alteration in the nature of [the] program.'" (*Pottgen*, *supra*, 40 F.3d at p. 930; see *E.R.K.*, *supra*, 728 F.3d at p. 993 [accommodation was not reasonable because it "would represent a 'fundamental' change" for the program]; *Mark H. v. Hamamoto* (9th Cir. 2010) 620 F.3d 1090, 1098 ["Reasonable accommodation does not require an organization to make fundamental or substantial alterations to its programs."]; *Wong*, *supra*, 192 F.3d at p. 817 [an accommodation is not "reasonable" if it would "substantially alter" the program]; see also *E.R.K.*, at p. 992 [under the ADA and the Rehabilitation Act, "a plaintiff who requires an accommodation to meet a program's essential eligibility requirements can establish the 'otherwise qualified' element of the prima facie case only by producing 'evidence of the existence of a *reasonable* accommodation'"].) "'Accordingly, the "reasonableness" of an accommodation and the

"essentialness" of an eligibility requirement are inextricably intertwined and must be examined together.'" (*Marshall*, at p. 199; see *Castellano v. City of New York* (S.D.N.Y. 1996) 946 F.Supp. 249, 254 ["When reviewing a challenge to the eligibility requirements of a program, a court must first review each eligibility requirement to determine whether or not the requirement is essential—which entails determining whether an accommodation is reasonable—and then must determine whether the individual has met those requirements that are essential."].)

Thus, "[t]he question whether a particular accommodation is reasonable 'depends on the individual circumstances of each case' and 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards.'" (*Vinson v. Thomas* (9th Cir. 2002) 288 F.3d 1145, 1154; accord, *Mark H. v. Hamamoto*, *supra*, 620 F.3d at p. 1098; see *Martinez v. County of Alameda* (N.D.Cal. 2021) 512 F.Supp.3d 978, 985 (*Martinez*) ["determining whether a modification is reasonable or would result in a fundamental alteration 'is an intensively fact-based inquiry'"]; *Marshall*, *supra*, 290 F.Supp.3d at p. 199 [the question "'requires a fact-specific, case-by-case inquiry, not only into the benefits of the accommodation but into its costs as well'"].) Moreover, a public entity's assertion that a requested accommodation is unreasonable "is an affirmative defense for which the asserting public entity bears the burden of proof." (*Martinez*, at pp. 984-985; see *Hindel v. Husted* (6th Cir. 2017) 875 F.3d 344, 347 ["'Fundamental alteration' is an affirmative defense under the ADA providing that governmental entities need not accommodate disabled individuals if doing so 'would result in a fundamental alteration in the nature of a service,

13

program, or activity or in undue financial and administrative burdens.'"]; *K.M. ex rel. Bright v. Tustin Unified School Dist.*, *supra*, 725 F.3d at p. 1096 ["[t]he public entity has the burden to prove that a proposed action would result in undue burden or fundamental alteration"].)

For these reasons, a public agency's contention that a requested accommodation is unreasonable is "typically fact-based and not capable of resolution on the basis of the pleadings alone." (*Hindel v. Husted*, *supra*, 875 F.3d at p. 347; see *Mary Jo C.*, *supra*, 707 F.3d at p. 153 ["It is a factual issue 'whether [a] plaintiff['s] proposed modifications . . . amount to "reasonable modifications" which should be implemented, or "fundamental alterations," which the state may reject.'"]; *Crowder v. Kitagawa* (9th Cir. 1996) 81 F.3d 1480, 1485 [whether the plaintiff's proposed accommodations constituted reasonable modifications or fundamental alterations could not be determined as a matter of law and required findings of fact].) "Case law and ADA regulations underscore that whether a requested policy modification . . . would result in a fundamental alteration or undue burden is a fundamentally factual question, inappropriate for disposition prior to discovery." (*Martinez*, *supra*, 512 F.Supp.3d at p. 985.)[4]

---

[4] Citing *Fry*, *supra*, 98 Cal.App.4th 256 at pages 264-265, the Medical Board asserts there are "two different approaches to resolve challenges to governmental entities' decisions to deny benefits or services in reliance on rules alleged to be essential eligibility requirements"—a "program-based approach" and an "individual-based approach"—and the Medical Board urges us to adopt the former. To the extent that acknowledging there are in fact two different approaches or adopting a "program-based

14

b. *Analysis*

Singh alleged his proposed accommodations—including that the Board allow his fifth, successful attempt at Step 3 of the USMLE to qualify him for medical licensure—are reasonable. That factual allegation is one that at this stage we generally must accept as true.[5] (See *Mathews v. Becerra* (2019) 8 Cal.5th 756, 762 [in determining whether the complaint states facts sufficient to constitute a cause of action, "we must accept the facts pleaded as true"]; see also *Martinez*, *supra*, 512 F.Supp.3d at p. 984 ["On a motion to dismiss [under Federal Rules of Civil Procedure, rule 12(b)(6)], all factual claims—such as [plaintiff's] claim that the accommodation she requested was reasonable— must be accepted as true."].) And because we accept the allegation as true, Singh sufficiently alleged he is "otherwise

approach" is inconsistent with our discussion of the law, we decline to do either.

[5]   *Rodrigo v. Carle Foundation Hospital* (7th Cir. 2018) 879 F.3d 236, on which the Medical Board heavily relies and which affirmed a summary judgment on a developed factual record (*id.* at pp. 242-244), is distinguishable for this reason.  It is also distinguishable because it concerned an ADA claim in the employment context, not the licensing context, and therefore the court had to determine whether the examination requirement at issue was an "essential function" of the plaintiff's job, not whether it was an essential eligibility requirement.  To make that determination, the court applied an analysis that is not applicable here.  (See *id.* at p. 242 ["In determining whether a particular duty is an essential function, we consider the employer's judgment, the employee's written job description, the amount of time the employee spends performing that function, the consequences of not requiring the employee to perform the function, and the experiences of past and current workers."].)

qualified" under Title II of the ADA and the Rehabilitation Act to receive a medical license from the Board.  (See *E.R.K.*, *supra*, 728 F.3d at p. 992.)

The Medical Board makes a number of unpersuasive arguments that Singh is not "otherwise qualified" as a matter of law.  Several of these—for example, that Singh "concedes . . . he does not satisfy the requirements of . . . sections 2177 or 2135.5," that the requirements in those sections are "unambiguous" and "mandatory" and give the Medical Board no discretion to create an exception for Singh, and that Singh's requested accommodation was unreasonable as a matter of law because he made it "*after* he became disqualified by operation of law"—all rest on the same faulty premise: that the four-attempt rule is an essential eligibility requirement (and any modification of it would be an unreasonable accommodation) because it is statutory.  But "statutes are no more immune to judicial scrutiny for ADA compliance than are rules or regulations."  (*Fry*, *supra*, 98 Cal.App.4th at p. 264.)  And where an eligibility requirement is not "essential" as discussed, "the fact that it is embodied in a statute . . . makes no difference."  (*Ibid*; see, e.g., *Crowder v. Kitagawa*, *supra*, 81 F.3d at p. 1486 [remanding for a determination whether the plaintiffs' proposed modifications to Hawaii's statutory quarantine for service dogs were reasonable under the ADA].)

Citing *Zukle*, *supra*, 166 F.3d 1041, the Medical Board argues its decisions that it had "to enforce the four-attempt requirement, that Singh is not otherwise qualified, and that no reasonable accommodation exists," are "entitled to deference."  But *Zukle* addressed ADA and Rehabilitation Act claims concerning academic decisions made by an educational

institution. (*Id.* at p. 1042.) And in that context the Ninth Circuit held that, although "the ultimate determination of whether an individual is otherwise qualified must be made by the court," a court should "extend judicial deference 'to the evaluation made by the institution itself, absent proof that its standards and its application of them serve no purpose other than to deny an education to handicapped persons.'" (*Id.* at pp. 1047-1048; see *id.* at p. 1048 [such deference extends to the determination that no reasonable accommodation is available].) But even assuming a similar deference applies to the determinations of a public agency in the context of licensing decisions, *Zukle* makes clear that such deference does not apply where, as here, the court is evaluating the sufficiency of a plaintiff's allegations. As the court in *Zukle* emphasized: "The educational institution has a 'real obligation . . . to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation.'" (*Id.* at p. 1048.)

The Medical Board also suggests that modifying the four-attempt rule would, as a matter of law, fundamentally alter its licensing program. In support of this suggestion the Medical Board cites various editions of and supplements to the Technical Assistance Manual (TAM) issued by the United States Department of Justice, which provides guidance on the requirements of Title II of the ADA.[6] The Medical Board quotes

---

[6] Because Congress delegated authority to promulgate regulations under Title II of the ADA to the Attorney General (*Mary Jo C., supra,* 707 F.3d at pp. 169-170), the views of the Department of Justice on implementing Title II "warrant respect"

17

passages stating that a "public entity does not have to lower or eliminate licensing standards that are essential to the licensed activity to accommodate an individual with a disability" (TAM (1993) § II-3.7200) and that "[a]n essential eligibility requirement for obtaining a license to practice medicine is the ability to practice medicine safely and competently" (TAM (1994 supp.) § II-3.5300). But those provisions do not answer the question at issue in this case: Is the four-attempt rule an "essential" eligibility requirement for practicing medicine safely and competently? Or, conversely, could it be modified in the way Singh proposes without fundamentally altering the Medical Board's program? As the TAM provides, in a passage quoted for some reason by the Medical Board, "Whether a specific requirement is 'essential' will depend on the facts of the particular case." (TAM (1993) § II-3.7200.) Exactly.

The Medical Board also cites legislative history of section 2177 that the Medical Board asserts "reflects that the statute was changed [in 2006] from an unlimited number of attempts within a ten-year period to a limit of four attempts because it had been shown that applicants who took the national examination several times before they passed were more likely to become substandard physicians practicing medicine." But as the Medical Board concedes, the history it cites "does not identify a specific number of attempts that are likely to predict substandard

(*Olmstead v. L.C. ex rel. Zimring* (1999) 527 U.S. 581, 597-598 [119 S.Ct. 2176, 144 L.Ed.2d 540]). In particular, "the TAM itself is entitled to substantial deference." (*Miller v. California Speedway Corp.* (9th Cir. 2008) 536 F.3d 1020, 1028; see *ibid.* ["'The guidance provided in the technical assistance manual is an interpretation of the DOJ's regulation and, as such, is entitled to significant weight as to the meaning of the regulation.'"].)

18

performance or data to support the conclusion that an applicant who passes in five attempts is more likely to perform below the standard of care than an applicant who passes in four attempts." The legislative history therefore does not establish that the accommodation Singh proposes would modify a requirement that is "essential" to ensuring that licensees practice medicine safely and competently or would otherwise fundamentally alter the Medical Board's licensing program.

Finally, the Medical Board cites two cases it appears to suggest stand for the proposition that any "relaxation of its license qualifications is not a reasonable accommodation" as a matter of law. Both are distinguishable. In the first, *Harris v. Mills* (2d Cir. 2009) 572 F.3d 66 (*Harris*), a state medical board revoked and refused to restore the plaintiff's medical license after finding he engaged in fraud and other improper practices. (*Id.* at pp. 68, 70.) He sued the medical board under Title II of the ADA and the Rehabilitation Act, alleging, among other things, the board did not reasonably accommodate his learning disabilities because it denied him an "'understanding of the impact of [his] disabilities.'" (*Harris*, at pp. 70-71, 74.) The court in *Harris* concluded the plaintiff had not stated "a reasonable accommodation claim." (*Id.* at pp. 74, 76.)

But in doing so, the court in *Harris* explained: "Even read liberally, [the] complaint does not . . . identify how [the plaintiff's] disabilities affected the behavior that caused the revocation of his license, nor how those disabilities could be accommodated to reform this behavior. [The plaintiff] thus alleges, at core, that if only the defendants would 'understand' the impact of his disabilities, they would be willing to overlook the actions that caused him to lose his license in the first place. Generally

19

construed, this allegation amounts only to the contention that [the plaintiff's] medical licensing qualifications should be relaxed in light of his disability." (*Harris*, *supra*, 572 F.3d at p. 74; see *ibid*. [because the plaintiff "asks only for the state's 'understanding' of the reasons why he committed those actions [that resulted in the loss of his license], he cannot demonstrate that he is 'otherwise qualified' for a medical license"].) In contrast, Singh's allegations identify how his alleged disability affected his inability to meet the four-attempt rule and how the Medical Board could reasonably accommodate that disability. He has not, like the plaintiff in *Harris*, proposed that the Medical Board simply "relax" its requirement he must be qualified to practice medicine.

The second case, *Block v. Texas Board of Law Examiners* (5th Cir. 2020) 952 F.3d 613, concerned a law-licensing rule in Texas providing that out-of-state attorneys can be admitted to the State Bar of Texas without taking the Texas bar examination "if they (1) have actively practiced law for at least five of the last seven years (the 'active practice requirement'); (2) have a J.D. from an approved law school; and (3) have not previously failed the Texas bar exam." (*Id.* at pp. 615-616.) After the plaintiff, a licensed Louisiana lawyer whose disability forced him to stop practicing law more than 10 years before, took and failed the Texas bar examination, he applied without examination, "explaining that his disability prevented him from satisfying the active practice requirement." (*Id.* at p. 616.) The Texas Board of Law Examiners (TBLE) denied his application, and he sued, alleging, as relevant here, "TBLE's refusal to waive [the active practice requirement] for him" violated Title II of the ADA. (*Block*, at p. 616.) The court in *Block* concluded the plaintiff had

not stated a claim under Title II because the modification he sought—waiver of the active practice requirement—was not a reasonable one. (*Block*, at pp. 618-619.)

But as the analysis in *Block* suggests, the accommodation sought by the plaintiff there was, in essence, that there be *no* eligibility requirement for him. As the court explained: "TBLE protects the integrity of its bar by requiring applicants to either pass the Texas bar exam or meet the three requirements for admission without examination. The active practice requirement ensures that applicants have both achieved and *maintained* the skill and knowledge required to practice law in Texas. Waiving it to admit a lawyer who has neither passed the Texas bar exam nor practiced law for thirteen years would not inform TBLE of a vital fact: does [the plaintiff] *currently* have the necessary knowledge and skill to practice law?" (*Block*, *supra*, 952 F.3d at pp. 618-619.) Here, in contrast, Singh has not proposed the Medical Board waive the requirement that he pass Step 3 of the USMLE, only that it modify the four-attempt rule to accommodate his disability (by accepting his passing grade on the fifth attempt), and the Medical Board has not shown that this accommodation is unreasonable as a matter of law.

### 2. *Singh Alleged Sufficient Facts To Constitute a Cause of Action for Violation of FEHA*

Singh also alleged the Medical Board discriminated against him based on a disability in violation of FEHA, specifically, Government Code section 12944, subdivision (b), which provides: "It shall be unlawful for a licensing board to fail or refuse to make reasonable accommodation to an individual's mental or physical disability or medical condition." Arguing FEHA and

21

"interrelated" state law "incorporate[ ] the protections of Title II for State-sponsored programs and activities" (see *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 770, fn. 2 ["FEHA is intended to be independent of, and provide greater protection than, the ADA"]), the Medical Board asserts that "the same analysis" applies to Singh's allegations under FEHA. It does. (See *Ravel v. Hewlett-Packard Enterprise, Inc.* (E.D.Cal. 2017) 228 F.Supp.3d 1086, 1095 ["courts have often 'analyze[d] . . . [FEHA] and federal disability claims together, relying on federal authority in the absence of contrary or differing state law'"]; see also *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128, 1133, fn. 6 ["Because the FEHA provisions relating to disability discrimination are based on the ADA, decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions."].) The Medical Board's challenges to Singh's cause of action under FEHA fail for the same reasons its challenges to Singh's causes of action under Title II and the Rehabilitation Act fail.

  C. *The Trial Court Did Not Err in Sustaining the Demurrer to Singh's Petition for Writ of Mandate*

 "'Code of Civil Procedure section 1085, providing for writs of mandate, is available to compel public agencies to perform acts required by law. [Citation.] To obtain relief, a petitioner must demonstrate (1) no "plain, speedy, and adequate" alternative remedy exists [citation]; (2) '"a clear, present, . . . ministerial duty on the part of the respondent"'; and (3) a correlative '"clear, present, and beneficial right in the petitioner to the performance of that duty."' [Citations.] A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a

given state of facts exists, without regard to any personal judgment as to the propriety of the act.'" (*International Brotherhood of Teamsters, Local 848 v. City of Monterey Park, supra*, 30 Cal.App.5th at p. 1111; see *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 ['"A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists."'].)

In the Medical Board's demurrer to Singh's cause of action seeking a writ of mandate, the Medical Board asserted that Singh failed "to allege facts sufficient to establish that [the Medical Board has] a clear, present, and ministerial duty under [Title II of the ADA, the Rehabilitation Act, or FEHA] to provide a reasonable accommodation and engage in the interactive process in order to enable [Singh] to be considered for a medical license. . . . [S]uch actions require the exercise of judgment and discretion . . . ." The Medical Board also asserted that Singh failed "to allege facts sufficient to establish that he has a clear, present and beneficial right in the performance of the duty."

The Medical Board did not support these assertions with any argument or citation to legal authority in its memorandum of points and authorities. Neither the Medical Board nor Singh discussed in the trial court, or discuss on appeal, whether, assuming Singh stated causes of action for disability discrimination, the Medical Board did or did not have a ministerial, nondiscretionary duty to grant Singh the relief he seeks. Indeed, the accommodation Singh requests, either count his fifth test as his fourth test or allow him to take the test again,

23

would require the Medical Board to make a choice; i.e., to exercise discretion.

It is hard to see how the Medical Board could have a ministerial, nondiscretionary duty to act in the manner (or in one of two manners) requested by Singh. Singh has not articulated how or why the Medical Board would have such a duty, nor has he shown he could amend his complaint to make such an allegation. Thus, the trial court did not err in sustaining the Medical Board's demurrer to Singh's cause of action for a writ of mandate. (See *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 ["Mandamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner."]; *Ochoa v. Anaheim City School Dist.* (2017) 11 Cal.App.5th 209, 223, fn. 3 ["'A writ cannot be used to control a matter of discretion.'"]; *Wilson v. Board of Retirement of Los Angeles County Employees Retirement Assn.* (1957) 156 Cal.App.2d 195, 213 [trial court did not err in sustaining a demurrer to causes of action for writs of mandamus where "no mandatory duty has been shown to exist on . . . the respondent boards to perform the acts for which the writs were sought"]; see also *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 ["The plaintiff has the burden of proving that an amendment would cure the defect."].)

## DISPOSITION

The trial court's order dismissing the case is reversed. The trial court is directed to vacate its orders sustaining the Medical Board's demurrers, and to enter a new order overruling the demurrers to Singh's causes of action for violation of the ADA, the Rehabilitation Act, and FEHA and sustaining the demurrer to Singh's cause of action for a writ of mandate without leave to amend. Singh is to recover his costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


IBARRA, J.*

---

*     Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25